STATE OF NORTH CAROLINA v. PAUL WILFRED JOHNSON

No. 46

(Filed 6 June 1978)

1. Homicide §§ 27.1, 28.3— voluntary manslaughter—malice—excessive force while defending self—jury instructions improper

   Where the trial court instructed, in effect, that defendant should be convicted of voluntary manslaughter if (1) due to the State's failure to carry its burden of proof, the jury had a reasonable doubt that defendant killed his victim "with malice because of the heat of passion," or (2) if the State failed to satisfy the jury beyond a reasonable doubt that defendant used excessive force while exercising his right of self-defense, defendant is entitled to a new trial, since the first part of the instruction was ambiguous and the second part was manifestly erroneous.

**2. Criminal Law § 101.4— conversation between third person and juror—when new trial required**

Generally speaking, a defendant is not entitled to a new trial because of a conversation between a juror and a third person unless the conversation is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom, or is of such a nature as is calculated to result in harm to a party on trial.

**3. Criminal Law § 101.4— comments to jurors by bailiff—new trial required**

Comment made by the bailiff, who was in charge of the sequestered jury throughout each day during court hours, after the jury had received the case, that "he was proud or glad that the district attorney for the State in his argument to the jury stood up for the law enforcement officers of Swain County," constituted misconduct which was sufficiently gross and likely to cause prejudice to defendant that a new trial must be had, since the quality of investigation made by the sheriff and his deputies, and their credibility, were contested matters, and the remarks were calculated to harm defendant by impressing the case upon the minds of the jurors in a different aspect than was presented by the evidence in the courtroom.

ON certiorari to the Court of Appeals to review its decision, 34 N.C. App. 328, 238 S.E. 2d 313 (1977), finding no error in the trial before *Hasty, J.*, at the March 1977 Session of SWAIN Superior Court but remanding the case for a hearing on defendant's motion for a new trial.

The bill of indictment charges defendant with first degree murder of Clyde Junior Tabor on 15 January 1977 in Swain County.

The State's evidence tends to show that Clyde Junior Tabor, driving a 1971 blue Plymouth, left his home in Murphy on Saturday afternoon, 15 January 1977, to go to Bryson City to pick up an oil tank. He arrived at the home of Larry Joe Nance at about 2:40 p.m. where he remained until about 3:25 p.m. during which time he made a telephone call.

At approximately 4 p.m. on said date the dead body of Tabor was found lying in the snow in the Euchella Cemetery about 25 feet from his car, the engine of which was still running. There were footsteps in the snow all around the body and leading up a bank into a wooded area. There was blood on Tabor's face and under his body and also between the body and the car.

Sheriff Wiggins was called and while driving to the cemetery about 4:45 p.m. he saw defendant coming out of the woods with a revolver in a holster strapped to his belt. The sheriff had known defendant for several years and stopped to inquire why defendant was carrying a gun. Defendant said he was hunting and, upon the sheriff's request, gave the gun to him. Defendant got into the car and the sheriff stated that he didn't know what was going on at the cemetery. Defendant then said he intended to call the sheriff and turn himself in; that "he [Tabor] made a phone call and was going to meet my daughter out here, and I shot him. . . . I told him what I was going to do if he didn't leave us alone." Upon arriving at the cemetery the sheriff learned that Tabor had been shot and was dead. His body was still lying in the snow. The sheriff turned defendant over to other officers who took him to Bryson City where he was placed under arrest.

Sheriff Wiggins traced footsteps in the snow leading from the cemetery into the woods and followed them to the point where he had picked up the defendant. While tracing the steps he discovered the butt of a rifle sticking out of the snow in a fence row of kudzu vines. It was later determined that the bullet which killed Clyde Junior Tabor was fired from this rifle. Tests indicated that the rifle was less than four feet but more than two feet from the decedent at the time it was fired.

It was determined by autopsy that Clyde Junior Tabor died from loss of blood secondary to a gunshot wound in his chest and abdomen. His blood contained .15 percent alcohol, and in the opinion of the pathologist the decedent was intoxicated at the time of his death.

The State offered evidence to the effect that in September 1976 defendant had threatened the life of the decedent in the presence of decedent's mother and Deputy Sheriff Terry Crisp.

Defendant testified in his own behalf and offered other witnesses as well. His evidence tends to show that he had undergone surgery on his right eye for removal of a cataract on 1 December 1976 and his physical activities had been restricted by his physician. He denied having had any trouble with the decedent except for a few words on one occasion. On Saturday afternoon, 15 January 1977, defendant decided to go hunting and his wife drove him to the side road leading to the cemetery. At that

time he had a revolver and a .22 caliber rifle. He got out of the car, walked down the road leading to the cemetery and saw a blue car arriving but did not know who was driving it. The driver got out and left the motor running. At that time defendant recognized Clyde Junior Tabor. Tabor said he was going to kill him. A scuffle began and Tabor hit defendant over the head with something. Defendant then struck Tabor with the rifle. As they scuffled defendant's nose was smashed and began bleeding. During the fight defendant struck Tabor over the head with the rifle and stepped back, whereupon Tabor reasserted that he intended to kill defendant, made a dive for him, and defendant shot Tabor in self-defense.

Defendant testified that he then walked from the cemetery to Highway 19, hiding the rifle in the snow along the way because he was concerned that J. C. Tabor might happen along and see him. Upon reaching Highway 19 he saw the sheriff and told him he was the man he was looking for. The sheriff asked about the gun he was carrying and he surrendered it to the sheriff. Defendant denied telling the sheriff anything about a phone call or stating what he would do to Tabor if he didn't leave his daughter alone. He further denied telling the sheriff that he shot Tabor.

Trial of this case commenced on Monday, 7 March, and the verdict was returned and the jury discharged on Thursday afternoon, 10 March 1977 at 4:22 p.m. After the jury had been selected and empaneled the trial judge entered a written sequestration order which was read in open court and a copy delivered to each juror, each alternate juror, all counsel, and to Windell A. Crisp, a part-time Special Deputy Sheriff of Swain County who was appointed jury officer and placed in charge of the jury for the duration of the trial. Officer Crisp was dressed as a Deputy Sheriff of Swain County, wearing a uniform indistinguishable from the uniforms worn by Sheriff Wiggins and Deputy Sheriff Terry Crisp, the apparel including a shoulder patch, badge, name plate, gun and ammunition.

Under the sequestration order the jury was released at night but kept in custody of the jury officer during court hours. The order directed that: (1) the jury officer keep all jurors together and permit no person directly or indirectly, by voice, writing or otherwise, to approach or contact any of them; (2) the jurors talk

to no one and let no one talk to them about the case; and (3) the jurors permit no one to comment on the trial to them or in their presence and neither acquire nor attempt to acquire information or intelligence about the case from an outside source.

The trial judge submitted as permissible verdicts: guilty of murder in the first degree, guilty of murder in the second degree, guilty of voluntary manslaughter, or not guilty. At 4:22 p.m. on Thursday afternoon, 10 March 1977, the jury returned a verdict of guilty of voluntary manslaughter after which the jury was duly polled and excused. Shortly thereafter defendant was sentenced to imprisonment for a term of not less than twelve nor more than fifteen years and notice of appeal was given in open court. That term of Swain Superior Court duly expired by law on Saturday, 12 March 1977.

Around 5 p.m. on Friday, 11 March 1977, defense counsel first learned that the jury officer had allegedly gone into the jury room after the jury retired to deliberate and, in the presence of the twelve jurors, made the statement that "he was glad the State took up for the law enforcement officers instead of tearing them down like the defense did," as contained in the affidavit of Juror Bruce M. Medford, or "he was glad or appreciated or was proud that the attorney had commented on upholding the actions of the officers in the investigation of the case," as contained in the affidavit of Juror R. A. Patillo.

Based on the affidavits of the two jurors defendant filed a motion in the cause on Monday, 14 March 1977, to vacate the judgment, set aside the verdict and grant defendant a new trial.

On 15 March 1977 the district attorney who represented the State in this prosecution filed an answer to defendant's motion stating, among other things: "It is expressly denied that the jury officer Windell A. Crisp at any time made any comments to the jury or any member thereof on 'the case and the evidence'; it is not denied that on one occasion the jury officer, Windell A. Crisp made a comment in the presence of one or more members of the jury in substance that he was proud or glad that the District Attorney for the State in his argument to the jury stood up for the law enforcement officers of Swain County. . . ."

In connection with the district attorney's answer, the jury officer, Windell A. Crisp, filed an affidavit stating, among other things, that he "at one time did make a statement in the presence of one or more jurors that 'I am glad Marcellus stood up for law enforcement'; . . . and your affiant verily believes and recalls that said statement was made at Sneed's Restaurant at lunch on Thursday to the best recollection of your affiant."

The motion came on for hearing in another county on 28 March 1977 before Judge Hasty who, being of the opinion that the court was without jurisdiction to entertain and pass upon the motion, denied and dismissed it. Defendant in apt time appealed therefrom.

As soon as the record on appeal was certified to the Court of Appeals, defendant petitioned that court for certiorari to bring up for review Judge Hasty's order denying the motion for a new trial and, at the same time, renewed in the Court of Appeals his original motion for a new trial. Prior to oral argument the Court of Appeals withheld ruling on defendant's petition for certiorari and, after oral argument, dismissed the petition and the motion for a new trial filed in that court, stating that the questions presented therein were being considered in the appeal of the case. Thereafter, in its decision rendered on the merits, the Court of Appeals overruled all assignments of error and found "No Error in the Trial." With respect to the misconduct of the jury officer, the case was remanded to the Superior Court of Swain County for a hearing on defendant's motion for a new trial initially filed in that court and for findings as to whether there was any irregularity by which defendant was prevented from having a fair trial. To that end Judge Hasty's order dismissing defendant's motion for a new trial was vacated.

Defendant gave notice of appeal to the Supreme Court and also petitioned for discretionary review under G.S. 7A-31. We allowed the petition and denied the State's motion to dismiss the appeal.

*Rufus L. Edmisten, Attorney General, by Thomas H. Davis, Jr., Associate Attorney, for the State of North Carolina.*

*Herbert L. Hyde and G. Edison Hill, attorneys for defendant appellant.*

HUSKINS, Justice.

[1] We first consider defendant's assignment of error which challenges the following excerpt from the charge:

"If you find from the evidence beyond a reasonable doubt that on or about January 15, 1977, Paul Wilfred Johnson intentionally and without justification or excuse, fired a .22 caliber shot into the body of Clyde Junior Tabor with the rifle offered and received into evidence as State's Exhibit 9 thereby proximately causing Clyde Junior Tabor's death, but the State has failed to satisfy you beyond a reasonable doubt that the defendant killed with malice because of the heat of sudden passion, or while exercising the right of self defense he used excessive force, it would be your duty to return a verdict of guilty of voluntary manslaughter."

When properly analyzed, this excerpt from the charge says: (1) If, due to the State's failure to carry its burden of proof, the jury has a reasonable doubt that defendant killed his victim "with malice because of the heat of passion," defendant should be convicted of voluntary manslaughter; or (2) if the State has failed to satisfy the jury beyond a reasonable doubt that defendant used excessive force while exercising his right of self-defense, defendant should be convicted of voluntary manslaughter. The first portion of the excerpt is ambiguous and subject to various interpretations — some permissible, others not. The second portion is manifestly erroneous. In view of the fact that defendant was convicted of voluntary manslaughter, a new trial is mandatory. *State v. Carver*, 286 N.C. 179, 209 S.E. 2d 785 (1974). *Compare State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969).

We are inclined to think that the confusing instruction attributed to the able trial judge was erroneously transcribed. Even so, the record imports verity and we are bound by the record as certified. *Foods, Inc. v. Super Markets*, 288 N.C. 213, 217 S.E. 2d 566 (1975); *Rogers v. Rogers*, 265 N.C. 386, 144 S.E. 2d 48 (1965).

One remaining assignment merits discussion at this time.

Defendant assigns as error the denial of his motion for a new trial based upon the alleged misconduct of the jury officer in commenting to the jury after it had retired to deliberate on its ver-

dict, in substance, "that he was proud or glad that the district attorney for the State in his argument to the jury stood up for the law enforcement officers of Swain County."

[2]    While courts are zealous in protecting litigants against improper influences exerted by court officers and other persons who are strangers to the litigation, "the rule sustained by the great weight of authority is that a verdict will not be disturbed because of a conversation between a juror and a stranger when it does not appear that such conversation was prompted by a party, or that any injustice was done to the person complaining, and he is not shown to have been prejudiced thereby, and this is true of applications for a new trial by the accused in a criminal case as well as of applications made in civil actions. Clearly, a conversation between a juror and a third person which is of a harmless character, unrelated to the matter in issue, and not tending to influence or prejudice the jury in their verdict, will not afford cause for a new trial. . . . [A]nd if a trial is clearly fair and proper, it should not be set aside because of mere suspicion or appearance of irregularity which is shown to have done no actual injury. Generally speaking, neither the common law nor statutes contemplate as ground for a new trial a conversation between a juror and a third person *unless it is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom, or is of such a nature as is calculated to result in harm to a party on trial.* The matter is one resting largely within the discretion of the trial judge." (Emphasis added.) 58 Am. Jur. 2d, *New Trial*, § 109 (1971). This statement is quoted with approval in *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363 (1962), and is quoted and applied to the conduct of an erring bailiff in *State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968).

Ordinarily, motions for a new trial based on misconduct affecting the jury are addressed to the discretion of the trial court, and unless its rulings thereon are clearly erroneous or amount to a manifest abuse of discretion, they will not be disturbed. *State v. Sneeden, supra; O'Berry v. Perry*, 266 N.C. 77, 145 S.E. 2d 321 (1965); *Keener v. Beal*, 246 N.C. 247, 98 S.E. 2d 19 (1957). "The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct.

When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge." *Lewis v. Fountain*, 168 N.C. 277, 279, 84 S.E. 278, 279 (1915).

[3] We are of the opinion, however, that the remarks of the bailiff to the jurors were of such character as to require a new trial as a matter of law. The jury was sequestered and in the bailiff's charge throughout each day during court hours. The State admitted in its answer that the officer commented to some of the jurors, after the jury had received the case, that "he was proud or glad that the district attorney for the State in his argument to the jury stood up for the law enforcement officers of Swain County." The quality of the investigation made by the sheriff and his deputies, and their credibility, were contested matters and thus gave pointed significance to the comments. The improper remarks violated Judge Hasty's order that the jurors permit no one to comment to them on the trial and that the bailiff permit no person, directly or indirectly, to contact any of the jurors. The gratuitous communication by the bailiff to the jurors appears to have been calculated to result in harm to the defendant by impressing the case upon the minds of the jurors "in a different aspect than was presented by the evidence in the courtroom." We therefore are of the opinion, and so hold, that the bailiff's admitted remark constituted misconduct which was sufficiently gross and likely to cause prejudice to defendant that a new trial must be had. *See Parker v. Gladden*, 385 U.S. 363, 17 L.Ed. 2d 420, 87 S.Ct. 468 (1966). *Compare State v. Sneeden*, 274 N.C. 498, 164 S.E. 2d 190 (1968).

Procedurally speaking, the motion here could not be addressed to the trial court because Judge Hasty's judgment of imprisonment entered on 10 March 1977 was a final judgment from which defendant immediately appealed to the Court of Appeals. This appeal from the final judgment took the case out of the jurisdiction of the superior court, and, *after the term expired*, Judge Hasty was *functus officio* to consider defendant's motion for a new trial because of the alleged misconduct of the bailiff. *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363 (1962); *Wiggins v. Bunch*, 280 N.C. 106, 184 S.E. 2d 879 (1971). The Court of Appeals correctly held that Judge Hasty was without jurisdiction to hear and pass upon the motion. It erred, however, in failing to pass upon the merits of defendant's motion for a new trial. Pend-

ing the appeal and after the adjournment of the term of court at which the judgment was rendered, jurisdiction was in the Court of Appeals and defendant's motion for a new trial was properly before that court. Inasmuch as the bailiff's admitted communication to the jurors was of such character as to require a new trial as a matter of law, the Court of Appeals should have ordered a new trial rather than remanding the case to the Superior Court of Swain County for a hearing and findings on the motion and a discretionary determination by that court.

Defendant's remaining assignments are not likely to recur on retrial and we deem it unnecessary to discuss them.

For the reasons stated the decision of the Court of Appeals finding no error in the trial is reversed and the case is remanded to the Superior Court of Swain County for a

New trial.