GEORGANNE SMITH v. WILLIAM GEORGE PRICE

No. 332PA85

(Filed 18 February 1986)

**1. Bastards § 10— paternity action—JNOV for mother—error**

The trial court erred in a paternity action by granting plaintiff's motion for a judgment n.o.v. where the defendant admitted his own sexual relationship with plaintiff and the possibility of his paternity, but did not admit that he was the only male who could have fathered the child; the controlling evidence in the case was not documentary; plaintiff's case was dependent upon the credibility of her testimony and there were contradictions and uncertainties in her deposition and trial testimony concerning the date of her last menstrual period, her first meeting with defendant, and the date of her sexual relations with another man; and, although plaintiff offered the results of blood-grouping tests giving the statistical probability that defendant was the father, blood tests are primarily reliable for excluding rather than proving paternity. N.C.G.S. 1A-1, Rule 50(a), N.C.G.S. 8-50.1(b)(1).

**2. Rules of Civil Procedure § 59; Trial § 48— paternity action—juror misconduct —conditional new trial—error**

The trial court erred in a paternity action tried before 1 July 1984 by granting a conditional new trial on the basis of juror misconduct where the trial judge stated that the determination to grant a new trial was in his discretion, but the misconduct was improperly proved solely by the juror's affidavit and testimony. N.C.G.S. 1A-1, Rule 59(a)(2), N.C.G.S. 8C-1, Rule 606(b), N.C.G.S. 15A-1240.

**3. Bastards § 10— paternity action—dismissal of counterclaim based on fraud— moot**

The issue of whether the trial court erred by granting a directed verdict against defendant on his counterclaim for fraud in a paternity action was rendered moot by the reversal of the trial court's judgment n.o.v. and conditional new trial in favor of plaintiff.

**4. Bastards § 10; Attorneys at Law § 7.5— paternity action—award of attorney fees—error**

The trial court erred by awarding plaintiff attorney fees in a paternity action where the trial court did not include the attorney fees as part of the costs,

did not make a finding of good faith by the plaintiff, and gave no indication of what portion of the fees were attributable to the custody and support aspects of the case. N.C.G.S. 50-13.6, N.C.G.S. 6-4, N.C.G.S. 6-21(10).

ON discretionary review of the decision of the Court of Appeals, 74 N.C. App. 413, 328 S.E. 2d 811 (1985), affirming in part judgments entered 27 and 29 February 1984 in District Court, FORSYTH County. Heard in the Supreme Court 16 December 1985.

The plaintiff sued the defendant to have him declared the father of the son born to her 9 November 1981 and for custody and support determinations. The defendant denied paternity and in the alternative counterclaimed for damages, alleging that the plaintiff had defrauded him for the purpose of procreation.

The evidence at the jury trial showed, and the defendant admitted, that the plaintiff and the defendant engaged in sexual intercourse a total of four times between 20 February and 1 March 1981. Prior to that time the couple had been only casual acquaintances. The plaintiff telephoned the defendant on 20 February and they agreed to go to dinner. Afterwards they went to the defendant's apartment where they engaged in sexual relations.

The plaintiff had stated in deposition that she thought sexual intercourse was "the logical conclusion of an enjoyable evening."

Following the first act of intercourse the defendant asked about contraception methods and the plaintiff assured him that she was taking care of that. The following afternoon as the defendant was taking the plaintiff home from the defendant's apartment, he remarked that he had not seen her take her pill. She responded that she used the rhythm method of birth control.

The plaintiff admitted that in March of 1981 she had sexual intercourse with another man, but she contended that that encounter was after 19 March 1981 and that she was already pregnant at the time. Although she stated that she had had pregnancy tests at Lyndhurst Gynecological Associates in Winston-Salem on 19 March 1981 (just under four weeks after first having sexual relations with the defendant), she did not introduce the results of the tests.

Dr. Mary Ruth McMahan, Director of the Paternity Testing Laboratory at Bowman Gray School of Medicine in Winston-Sa-

lem, performed blood grouping tests upon blood samples taken from the plaintiff, the defendant and the child. She testified that the statistical probability that the defendant was the father of the child ranged from 96.42% to 99.95%. According to Dr. McMahan, she reports a range of probability, rather than a pure mathematical probability, based upon the strength or weakness of nonscientific evidence, such as the strength of evidence that only the putative father had access to the mother during the period of possible conception.

The plaintiff admitted that she did not use temperature charts and cervical mucus checks in practicing the rhythm method of birth control. She stated that she just checked the calendar and determined when her "safe" period was based upon the regularity of her menstrual cycle. She testified that she had become pregnant twice previously while utilizing the rhythm method. Her last period before conception of the child whose paternity is in issue occurred at the end of January 1981, beginning on 27 or 29 January.

Defendant's medical expert, Dr. Paul J. Meis, testified that the method of birth control as practiced by the plaintiff was unreliable. He also testified that a full-term baby conceived the 20th or 21st of February to a woman whose last menstrual period began on 29 January would likely be born on 11 November, but that that date could vary in either direction by two weeks. The plaintiff's child weighed over nine pounds when he was born on 9 November 1981.

At the close of all the evidence, the trial judge directed a verdict against the defendant on his counterclaim and denied both parties' motions for directed verdict on the issue of paternity. The jury returned a verdict that the defendant was not the father of the plaintiff's child, and the trial judge granted the plaintiff's motion for judgment notwithstanding the verdict (JNOV) on the issue of paternity. The plaintiff also made a motion for a conditional new trial, which was denied. However, plaintiff's "amended new trial motion" was later granted by the trial judge. After a hearing, the judge awarded custody, child support and attorney fees to the plaintiff. The defendant appealed.

The Court of Appeals affirmed the trial court's entry of a directed verdict against the defendant on the fraud counterclaim

and of the JNOV on the issue of paternity, but it vacated and remanded for further proceedings the trial court's order with respect to attorney fees. The Court of Appeals held that although attorney fees may be awarded for custody and support actions, there is no statutory basis for attorney fees in a paternity action. Having upheld the JNOV, the Court of Appeals did not discuss the judge's conditional order for a new trial.

This Court granted the defendant's petition for discretionary review. We reverse the Court of Appeals' ruling on the JNOV and the trial court's order granting the plaintiff's motion for a new trial. We affirm the ruling of the Court of Appeals remanding the case for further proceedings on the issue of attorney fees. The issue of the directed verdict on the defendant's counterclaim has been rendered moot.

*Pettyjohn, Molitoris & Connolly, by Anne Connolly, for plaintiff-appellee.*

*David B. Hough for defendant-appellant.*

BILLINGS, Justice.

*I. Judgment Notwithstanding the Verdict*

[1] According to the defendant, the plaintiff's motion for JNOV was not properly before the trial judge because when the plaintiff made a motion for a directed verdict at the close of all of the evidence (a prerequisite for JNOV), the plaintiff did not state the specific grounds therefore, as required by N.C.G.S. § 1A-1, Rule 50(a). When making the motion, the plaintiff's attorney said, "Your Honor, for the record purposes only, we'd also make a motion for a directed verdict with respect to the paternity issue but do not feel we need to argue that." The judge replied, "Okay, well, with respect to the issue of paternity, I'm going to deny the motions for directed verdict." The judge referred to motions in the plural because the defendant's counsel had just argued his own motion for directed verdict on the paternity issue, after plaintiff's counsel had argued his motion for directed verdict on the fraud issue. The plaintiff claims here that the judge and the parties knew the grounds for the plaintiff's motion. The defendant claims that, although an order entered by the trial judge states that the judge was aware of the grounds for the plaintiff's motion,

there is nothing in the record to show that the defendant knew the grounds. This Court held in *Anderson v. Butler*, 284 N.C. 723, 202 S.E. 2d 585 (1974) that, although stating the grounds for a directed verdict is mandatory, N.C.G.S. § 1A-1, Rule 50(a) should not be inflexibly enforced in situations where the grounds are apparent to the court and to the parties. We do not decide whether *Anderson* applies in this case because, assuming *arguendo* that the motion for JNOV was properly before the trial court, the judge erred in granting it.

In a paternity action under N.C.G.S. § 49-14, the plaintiff must prove beyond a reasonable doubt that the defendant is the father of the child whose paternity is in issue. In this case, in order to affirm the JNOV we must conclude as a matter of law that the jury could have had no reasonable doubt that the defendant was the biological father of the plaintiff's son. The evidence in this case is not so overwhelming, however, that the doubt expressed by the verdict of a unanimous jury can be said to be without reason.

In considering a motion for JNOV, the trial court is to consider all evidence in the light most favorable to the party opposing the motion; the nonmovant is to be given the benefit of every reasonable inference that legitimately may be drawn from the evidence; and contradictions must be resolved in the nonmovant's favor. *Potts v. Burnette*, 301 N.C. 663, 273 S.E. 2d 285 (1981). The same standard is to be applied by the courts in ruling on a motion for JNOV as is applied in ruling on a motion for a directed verdict. *Investment Properties v. Allen*, 281 N.C. 174, 188 S.E. 2d 441 (1972), *vacated on other grounds on rehearing*, 283 N.C. 277, 196 S.E. 2d 262 (1973); *Summey v. Cauthen*, 283 N.C. 640, 197 S.E. 2d 549 (1973). In *Cutts v. Casey*, 278 N.C. 390, 417, 180 S.E. 2d 297, 311 (1971), an action in trespass to try title, this Court said that the trial court cannot "direct a verdict in favor of the party having the burden of proof when his right to recover depends upon the credibility of his witnesses." Subsequent cases have explained the statement in *Cutts*, and it is now clear that a directed verdict or a judgment notwithstanding the verdict may be entered in favor of the party with the burden of proof "where credibility is manifest as a matter of law." *Bank v. Burnette*, 297 N.C. 524, 536, 256 S.E. 2d 388, 395 (1979). "In such situations it is proper to direct verdict for the party with the burden of proof if the evi-

dence so clearly establishes the fact in issue that no reasonable inferences to the contrary can be shown." *Id.* In *Burnette,* this Court identified three situations where credibility is manifest as a matter of law:

(1) Where non-movant establishes proponent's case by admitting the truth of the basic facts upon which the claim of proponent rests. [Citations omitted.]

(2) Where the controlling evidence is documentary and non-movant does not deny the authenticity or correctness of the documents. [Citations omitted.]

(3) Where there are only latent doubts as to the credibility of oral testimony and the opposing party has "failed to point to specific areas of impeachment and contradictions." [Citations omitted.]

*Id.* at 537-38, 256 S.E. 2d at 396.

In this case, although the defendant, the nonmovant, admitted the truth of his own sexual relationship with the plaintiff and therefore the *possibility* of his paternity, he did not admit that he was the only male who could have fathered the plaintiff's son. Therefore, situation number one above does not apply in this case.

Neither is the controlling evidence in this case documentary; therefore, situation number two does not apply.

The plaintiff argues that although the plaintiff's case is dependent upon the credibility of her testimony, there are only latent doubts as to her credibility and the defendant has "failed to point to specific areas of impeachment and contradiction."

As this Court pointed out in *Burnette,* "the instances where credibility is manifest will be rare, and courts should exercise restraint in removing the issue of credibility from the jury." *Id.* at 538, 256 S.E. 2d at 396. "[E]ven though proponent succeeds in the difficult task of establishing a clear and uncontradicted prima facie case, there will ordinarily remain in issue the credibility of the evidence adduced by proponent." *Id.* at 536, 256 S.E. 2d at 395.

Although the plaintiff's evidence made out a strong prima facie case, we cannot say that all question of credibility was

removed, especially since the quantum of proof required is beyond a reasonable doubt and is thus higher than in the usual civil case. Considering the evidence in the light most favorable to the defendant, several points emerge that make the plaintiff's case subject to some reasonable doubt.

Although the plaintiff stated that she thought her menstrual period began on 29 January 1981, she was not sure of the exact date. She stated that she kept a record of her periods on a pocket calendar but did not have the calendar with her at the trial. She had testified in a pre-trial deposition that her period in January had begun on the 27th. Further, although at trial she testified that she first met the defendant in December of 1980 and went out with him to the Royal Pub in January, in her deposition she had said that the first meeting occurred in November and they went out to the Royal Pub in December. Her explanation was that "the deposition was a month off altogether; if you'll just move a — everything a month late, I think everything will fall into place." Both parties stated that they engaged in sexual intercourse during the period between 20 February and 1 March 1981 and thereafter they had no further personal contact. Very shortly thereafter the plaintiff engaged in sexual relations with another man but asked the jury to discount the possibility that he was the father because she found out on 19 March 1981 that she was pregnant, and she did not have sexual relations with the other man until after that date. She was unsure of the exact date when she had sexual intercourse with him but was sure it was in late March. No results of the pregnancy test which the plaintiff said she had performed were introduced into evidence. This is not proof from which the courts can say that the evidence establishes as a matter of law that the jury could not entertain a reasonable doubt as to the defendant's being the father of the plaintiff's child.

The credibility of the plaintiff herself is at the heart of this case. She is an interested witness testifying about information within her knowledge but not available to the defendant as it relates to her menstrual cycle and her contact with other men. The jury certainly had the right to weigh her testimony and decide whether a reasonable doubt existed about her statements that the defendant was the only person with whom she had engaged in sexual relations between 29 January 1981 (the stated date of her last period) and 19 March 1981 (the date when she

said she knew she was pregnant) and about whether she in fact became pregnant during that period of time.

The plaintiff also offered the results of blood grouping tests. Although the blood grouping tests gave a statistical probability ranging from 96.42% to 99.95% that defendant was the father of the plaintiff's son, blood tests are primarily reliable for excluding the possibility of paternity, not proving paternity. *Cole v. Cole*, 74 N.C. App. 247, 252, 328 S.E. 2d 446, 449, *affirmed per curiam*, 314 N.C. 660, 335 S.E. 2d 897 (1985). The General Assembly has determined that if blood tests definitely *exclude* the putative father as a possible biological father,

> the jury shall be instructed that if they believe that the witness presenting the results testified truthfully as to those results, and if they believe that the tests and comparisons were conducted properly, then it will be their duty to decide that the alleged-parent defendant is not the natural parent.

N.C.G.S. § 8-50.1(b)(1). The legislature has not mandated any weight to blood tests which do not exclude the putative father. The jury is entitled to consider this evidence and accord it the weight deemed appropriate. The danger of relying too heavily on tests is illustrated rather dramatically in *Cole*, where the trial judge found paternity in part based on a 95.98% probability in the blood grouping tests, in spite of overwhelming evidence that the defendant was sterile at the time the baby was conceived. The Court of Appeals reversed the trial court after a discussion about the statistical formula generally used to calculate the probability of paternity being dependent upon something called "prior probability of paternity," which is based on factors other than the blood test. In *Cole*, the prior probability factor that defendant was sterile meant that the impressively specific and scientific sounding 95.98% probability had to be reduced to 0%. In the present case the equally impressive sounding numbers are entitled to no definitive life of their own; it is not out of the question that tests of blood samples from the other male with whom the plaintiff admittedly had sexual intercourse would show a similar statistical probability were he to undergo such tests. No tests were introduced which would exclude him as the father of the plaintiff's child.

The jury was entitled to draw its own conclusions about the credibility of the witnesses and the weight to accord the evi-

dence. Consequently, we reverse the Court of Appeals, which affirmed the JNOV.

## II. Order For New Trial

[2] Next the defendant requests us to examine the trial court's order granting the plaintiff a conditional new trial.

The trial judge granted the plaintiff's motion for a new trial, to become effective only if the appellate court reversed or vacated the JNOV. The defendant contends that at the time the trial judge ruled on the new trial motion he no longer had jurisdiction over the case because the defendant had given notice of appeal to the Court of Appeals.

The chronology of events surrounding the new trial motion is as follows: The trial commenced on 6 December 1983 during the 5 December 1983 civil session of Forsyth County District Court. The jury returned its verdict on 9 December 1983, and the plaintiff on 12 December filed written motions for JNOV and for a new trial. The grounds stated in the new trial motion were:

a. The verdict is not supported by the evidence.

b. Equity and justice require that said verdict be set aside.

The plaintiff's motions were heard on 13 December 1983 at which time the trial judge granted JNOV, but in response to the plaintiff's query about the new trial motion, he just shook his head indicating "no." No entry reflecting these rulings was made in the minutes. The defendant gave notice of appeal in open court on 13 December at the conclusion of the hearing. On 19 December 1983 the plaintiff filed a document entitled "Amended Motion for a New Trial" requesting a new trial on the ground of prejudicial juror misconduct. *See* N.C.G.S. § 1A-1, Rule 59(a)(2). The trial judge conducted a hearing on the "amended" motion on 9 January 1984. On 27 February 1984, the trial judge entered four written orders. The first order set aside the verdict of the jury and entered judgment for the plaintiff. The second order contained, *inter alia*, the following:

1. Plaintiff made an oral motion for a new trial in conjunction with a motion for judgment notwithstanding the verdict on December 9, 1983, in open court immediately after a

verdict in favor of the defendant had been rendered, and defendant opposed the oral motion; and

. . .

3. The plaintiff's oral motion was reduced to writing, filed and served on the defendant on December 12, 1983; and

. . .

5. Plaintiff did not establish sufficient grounds for a new trial and the motion should be denied; and

6. At the hearing on December 13, 1983, the Court made a non-verbal response to plaintiff's motion for a new trial; and

7. The Court's non-verbal response was not recorded in the minutes of the December 13, 1983 hearing; and

8. The non-verbal response of the Court was misinterpreted by plaintiff, as evidenced by plaintiff's amended motion for new trial filed on December 17 [sic], 1983.

THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Plaintiff's oral motion for new trial which was reduced to writing and filed on December 12, 1983, is hereby denied;

2. The date of the actual signing of this Order shall be the effective date of this Order for all purposes.

The third order determined the matters of custody and child support for the minor child. The fourth order was the ruling granting the amended new trial motion and contains, *inter alia*, the following:

2. That on December 13, 1983, the Honorable David R. Tanis granted plaintiff's motion for judgment notwithstanding the verdict and ordered that the verdict previously entered be set aside and judgment be entered for the plaintiff. Defendant, in open court, gave notice of appeal.

.          . . .

7. That the Court has jurisdiction to rule on plaintiff's amended motion for new trial in that the parties were ob-

viously confused on December 13, 1983 as to the meaning of Judge Tanis' non-verbal response to plaintiff's initial motion for new trial filed on December 12, 1983. Further, while it was the intention of Judge Tanis to deny plaintiff's motion for new trial on December 13, 1983, the non-verbal response was not entered in the minutes nor was an order denying said motion signed and entered prior to the amended motion being filed or brought on for hearing.

The trial court then found facts regarding the conduct of one juror as evidenced by that juror's affidavit and testimony and ordered:

that if the judgment notwithstanding the verdict granted herein is vacated or reversed on appeal, the Court hereby determines in its discretion that the misconduct of the juror . . . was prejudicial and a new trial shall be granted.

Appeal entries were signed by the trial judge on 27 February 1984.

The defendant contends that the trial judge erred in his conclusion that that court had jurisdiction to rule on the plaintiff's "amended" motion for new trial.

Since we conclude that, regardless of the question of jurisdiction, the trial judge erred in granting the amended new trial motion, we find it unnecessary to discuss the question of jurisdiction.

Ordinarily, a motion for a new trial is addressed to the sound judicial discretion of the trial judge and is not reviewable in the absence of an abuse of discretion. *Worthington v. Bynum*, 305 N.C. 478, 290 S.E. 2d 599 (1982). However, in this case, the defendant contends that the trial judge based his decision to grant a new trial solely upon evidence which, under decisions of this Court, is incompetent, and that review is requested upon a question of law rather than upon the exercise of the trial judge's discretion. *See Selph v. Selph*, 267 N.C. 635, 148 S.E. 2d 574 (1966) and *Stone v. Baking Co.*, 257 N.C. 103, 125 S.E. 2d 363 (1962).

The 19 December 1983 amended new trial motion alleged juror misconduct in that one juror had "made an independent investigation of matters involved in the trial," and the juror's affidavit was attached to the motion. Over the defendant's objection

that a juror is not allowed by testimony or affidavit to impeach, attack or overthrow the jury's verdict, the trial judge conducted a hearing and on 27 February 1984 entered an order allowing the motion for a conditional new trial, finding, *inter alia*:

8. That based on the affidavit and live testimony of [the juror involved], . . . the Court finds that:

a. During the course of jury deliberations, [the juror] telephoned Lyndhurst Gynecological Associates and in answer to questions posed was informed that an internal exam of a pregnant patient could be used to show whether a woman was six or eight weeks into her pregnancy. She was also informed that sonic scans could be used to pinpoint the date of conception. While the juror did not question the nurse concerning the plaintiff in this action, Lyndhurst Gynecological Associates served as plaintiff's obstetricians during the pregnancy involved in this case and [the juror] knew so at the time she called Lyndhurst.

b. That [the juror] did not inform the other jurors of her investigation.

c. That prior to receiving the information from Lyndhurst, [the juror] voted that the defendant was the father of the child born to the plaintiff on November 9, 1981. That subsequent to receiving the information, [the juror] changed her vote to state that defendant was not the father. That while deliberations continued after [the juror] received the information and she had the benefit of those deliberations prior to her final vote, [the juror] stated that her final vote of no on the issue of paternity was based on the reasonable doubt which was raised in her mind as a result of the information she received from Lyndhurst.

Effective 1 July 1984, N.C.G.S. § 8C-1, Rule 606(b) controls the question of competency of jurors as witnesses upon an inquiry into the validity of a verdict. Because this case was tried prior to that date, Rule 606(b) does not apply, and we must look to prior law to determine whether the trial judge properly received the juror's affidavit and testimony. Also, we note that N.C.G.S. § 15A-1240 applies only to criminal cases and has no applicability to this civil proceeding.

The case of *Selph v. Selph*, 267 N.C. 635, 148 S.E. 2d 574 (1966) is in some respects strikingly similar to the one before us. Rather than impeaching his verdict on the basis of an independent investigation, the juror in *Selph* was allowed to state to the trial judge, after the verdict had been received and the jury dismissed, that he and at least two others were mistaken as to the legal effect of their answer to an issue. The judge ordered " 'that the verdict rendered by the jury be, and the same is hereby set aside in the discretion of the court, and a new trial is ordered.' " *Id*. at 637, 148 S.E. 2d at 575. Justice (later Chief Justice) Sharp, in the Court's opinion reversing the trial court, stated:

> In this case no abuse of discretion appears, nor is any abuse suggested. However, error in law does appear, for the motion upon which Judge Carr acted was based on grounds which the law does not recognize or sanction. To permit his order to stand would permit a juror to impeach the verdict and thus violate a public policy which had "been long settled" when the case of *State v. M'Leod*, 8 N.C. 344, was reported in 1821. If Judge Carr, without finding any facts except that the ends of justice required the action, had set aside the verdict in the exercise of his discretion, his order would have been unassailable on appeal.

*Id*. at 638, 148 S.E. 2d at 577.

In the instant case Judge Tanis had denied the plaintiff's motion which was based upon grounds that the verdict was not supported by the evidence and that equity and justice required that it be set aside. If that motion had been granted within the exercise of the trial judge's discretion, it "would have been unassailable on appeal." *Id*. However, Judge Tanis granted the amended motion specifically on the basis that "the misconduct of the juror . . . was prejudicial and a new trial shall be granted." The fact that Judge Tanis stated that the determination to grant a new trial was "in its [the court's] discretion" does not alter the fact that it was based solely upon the affidavit and testimony of the juror. Therefore, if that evidence was improperly received, the order granting the motion for a new trial must be reversed.

The evidence offered by the plaintiff through the juror touched upon two areas: (1) the fact that extraneous prejudicial in-

formation was acquired by the juror, and (2) the effect that this information had upon her vote. Even if N.C.G.S. § 8C-1, Rule 606 (b) were applicable to this case and allowed a juror's testimony as to area (1), apparently it prohibits testimony as to area (2). Under the law applicable to civil trials prior to July 1, 1984, juror evidence as to area (1) also was prohibited.

In *Stone v. Baking Co.,* 257 N.C. 103, 125 S.E. 2d 363 (1962) the trial judge refused to allow examination of a juror in conjunction with a new trial motion on the ground of juror misconduct made after the verdict was received. The misconduct related to an alleged conversation between the juror and an unidentified man during a lunch recess. In ruling that the trial judge properly refused to hear the juror, this Court said:

> "It is firmly established in this State that jurors will not be allowed to attack or to overthrow their verdicts, nor will evidence from them be received for such purpose." *Lumber Co. v. Lumber Co.,* 187 N.C. 417, 121 S.E. 2d 755. "The rule is a salutary one. If it were otherwise, every verdict would be subject to impeachment." *In re Will of Hall, supra,* N.C. Reports page 88, S.E. 2d page 13.
>
> Judge Hall was correct in denying plaintiff's motion at the September 1961 term to examine the juror Davis.

*Id.* at 106, 125 S.E. 2d at 365.

These cases clearly establish that prior to 1 July 1984, a juror's testimony could not be received even to show that extraneous prejudicial information was improperly brought to the jury's attention. While such evidence could be received in a criminal case because of the constitutional right of confrontation [*See Parker v. Gladden,* 385 U.S. 363, 17 L.Ed. 2d 420 (1966); *State v. Johnson,* 295 N.C. 227, 244 S.E. 2d 391 (1978); N.C.G.S. § 15A-1240; 1 Brandis on North Carolina Evidence § 65 (1982) ] no such exception to the general anti-impeachment rule applied in civil cases. Therefore, it was error for the trial judge to grant the conditional new trial on the basis of juror misconduct proved solely by the juror's affidavit and testimony.

### III. Directed Verdict on Counterclaim

[3]  The defendant asks us to determine whether the trial court properly granted a directed verdict against him on his coun-

terclaim for fraud, which alleged that the plaintiff made false representations in order to deceive the defendant into letting her use him for the purpose of procreation. The defendant asked for $85,000 in compensatory damages and $85,000 in punitive damages, $85,000 being a figure approximating what the defendant would have to pay for support if his paternity were established. The Court of Appeals affirmed the directed verdict against the defendant, saying that the defendant could not assert such a counterclaim because he was in effect trying to avoid his legal obligation to provide support for the child in the event that he was found to be the father. "The fact that he seeks damages from plaintiff rather than avoidance of the obligation altogether does not disguise his underlying intention to evade his responsibility to his child and to impede our enforcing of the child's legal and constitutional rights to support . . . . [T]he argument is simply not appropriate in a civil action to establish paternity, either as a defense or a counterclaim." 74 N.C. App. at 422, 328 S.E. 2d at 817. We do not decide here whether there can ever be a proper situation for allowing a fraud claim in a paternity suit, however, for by reversing JNOV in favor of the plaintiff and the order for a new trial on the issue of paternity, we have rendered the fraud issue moot.

## IV. Attorney Fees

[4] Finally, the plaintiff asks us to reverse the Court of Appeals' remand of the trial judge's award of attorney fees.

The Court of Appeals vacated the award of attorney fees to the plaintiff because N.C.G.S. § 50-13.6, which provides for an award of attorney fees in proceedings for custody or support of a minor child, does not apply to civil actions to establish paternity. We note that N.C.G.S. § 6-21 provides, *inter alia*, as follows:

Costs in the following matters shall be taxed against either party, or apportioned among the parties, in the discretion of the court:

. . .

(10) In proceedings regarding illegitimate children under Article 3, Chapter 49 of the General Statutes.

. . .

The word "costs" as the same appears and is used in this section shall be construed to include reasonable attorneys' fees in such amounts as the court shall in its discretion determine and allow: . . . .

There is a clear difference between including attorney fees in the costs taxed against a party to a lawsuit and in ordering the payment of attorney fees. When costs are taxed, they establish a liability for payment thereof, and if a fund exists which is the subject matter of the litigation, costs may be ordered paid out of the fund prior to distribution of the balance thereof to the persons entitled. *Rider v. Lenoir County*, 238 N.C. 632, 78 S.E. 2d 745 (1953). If no such fund exists, the satisfaction of the judgment for costs may be obtained by methods as for the enforcement of any other civil judgment. N.C.G.S. § 6-4.

In the case of attorney fees authorized by N.C.G.S. § 50-13.6, the court is given power to "order payment of reasonable attorney's fees to an interested party," which makes the award of attorney's fees an order of the court, enforceable by contempt for disobedience, rather than a civil judgment.

We note that the trial judge did not include the attorney fees as part of the costs but *ordered* that the defendant pay attorney fees in the amount of $2,250.00. The judgment states that the plaintiff's attorneys spent 45 hours in court "on this case." It therefore appears that the defendant has been ordered to pay attorney fees which were based in large part upon hours spent in prosecuting the paternity action. An award of attorney fees in this manner is not authorized by the law of this state.

The Court of Appeals correctly held that although attorney fees may be awarded pursuant to N.C.G.S. § 50-13.6 in an action for custody or support of a minor child, before awarding attorney fees the judge must find that the party to whom the fees are awarded was acting in good faith. Although a portion of the attorney fees in this case was awarded for the custody and support portion of the action, the trial judge made no finding of good faith by the plaintiff and no indication of what portion of the fees was attributable to the custody and support aspects of the case.

Because of error in the award of attorney fees and our reversal of the trial judge's entry of JNOV, we affirm that part of the

opinion of the Court of Appeals vacating the award of attorney fees and remanding for further proceedings on that issue.

Affirmed in part, reversed in part and remanded.