An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1261

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.

JEREMIAH LAMONT LUKE

Mecklenburg County
No. 11 CRS 250932

Appeal by Defendant from judgment entered 1 May 2013 by Judge C. Thomas Edwards in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 August 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Alvin W. Keller, Jr., for the State.*

*Anne Bleyman, Chapel Hill, for Defendant.*

DILLON, Judge.

Jeremiah Lamont Luke ("Defendant") appeals from a judgment entered upon a jury verdict finding him guilty of first-degree murder and from a subsequent order denying his motion for appropriate relief ("MAR").

I. Background

On the evening of 14 November 2011, Defendant shot and killed Mikal LeGrande ("Mr. LeGrande") in the parking lot of an apartment complex in Charlotte.

The State's evidence tended to show that moments before the shooting, Mr. LeGrande was at the apartment complex with two acquaintances, Mr. Maye and Mr. McManus. Defendant approached the scene, whereupon Defendant and Mr. LeGrande began arguing. However, Mr. Maye broke up the argument, at which point Defendant stated "I got something for you," and walked towards his truck.

Shortly after Defendant left, Mr. LeGrande walked with Mr. Maye and Mr. McManus towards Mr. Maye's apartment, which was in the same general direction as Defendant's truck. As Mr. LeGrande and his two acquaintances moved through the parking lot, Defendant reached into his vehicle, after which Defendant approached Mr. LeGrande, and engaged Mr. LeGrande in an argument. Mr. LeGrande put his hands in the air, but he was not holding a weapon or any other object, whereupon Defendant shot Mr. LeGrande. Mr. Maye ran from the scene and reported the incident to police two hours later. Mr. LeGrande died as a result of the gunshot. Police investigating the shooting found

a box cutter with the blade sticking up in Mr. LeGrande's pocket.

Defendant took the stand in his own defense. He testified that he was walking towards his truck when Mr. LeGrande approached him, threatening him with a knife. Defendant, therefore, reached into his truck for his gun and shot Mr. LeGrande in self-defense, without intending to kill Mr. LeGrande. Defendant stated that after shooting Mr. LeGrande, he drove away, throwing his gun out of the window of his truck; and that he hid from police for seven days, not returning to his home.

Defendant was indicted for murder, and his case was tried before Judge C. Thomas Edwards. The jury found Defendant guilty of first-degree murder, so Judge Edwards entered judgment sentencing Defendant to life imprisonment without the possibility of parole. That same day, Defendant entered his notice of appeal.

A week after the trial, Defendant served an MAR, seeking relief for matters related to the trial. Defendant's MAR was ultimately denied by Judge Richard D. Boner.[1] Defendant noted

---

[1] Defendant's MAR was initially dismissed by Judge W. Robert Bell. This Court ordered the trial court to reconsider the MAR, whereupon the MAR went before Judge Boner.

his appeal from both Judge Edwards' judgment and Judge Boner's order denying the MAR.

## II.  Argument

On appeal, Defendant argues that his MAR, which sought a new trial, should have been allowed.  Defendant also argues that the indictment charging him with murder is fatally defective.  For the following reasons, we find no error.

## A.  MAR

In his MAR, Defendant argues that he should be granted a new trial because his trial counsel failed to follow his instruction to move for a mistrial when it was discovered that one of the jurors had spoken to the mother of one of the State's witnesses (Mr. Maye) during a recess in the trial proceedings.

The contact in question was reported to the trial court after the jury had been charged and had retired to select a foreperson.  Specifically, during the recess, Defendant's brother witnessed a juror engage in a conversation with Mr. Maye's mother in the smoking area of the courthouse.  Upon learning about the contact, the trial court made inquiry of the juror, out of the presence of the other eleven jurors; and of Mr. Maye's mother separately, out of the presence of all twelve jurors.  During the inquiry, the juror stated that she had

spoken with Mr. Maye's mother; that she did not know the person she spoke to was Mr. Maye's mother; that she was wearing her juror badge; that the conversation involved the attire of someone passing by and the cold weather; that the conversation did not involve anything about the trial in any manner; and that the conversation would have no effect on her ability to be fair and impartial.

Mr. Maye's mother testified that she did not see the juror's badge because the juror was wearing a coat; that the conversation involved the attire of someone passing by and of the location of the smoking area; and that the conversation did not involve anything about the trial in any manner.

At the conclusion of this testimony, prior to the jury's verdict, neither Defendant's trial counsel nor counsel for the State moved for a mistrial.

During the MAR hearing before Judge Boner, Defendant testified that he had instructed his trial counsel to move for a mistrial based on the conversation between Mr. Maye's mother and the juror; that his trial counsel refused to move for a mistrial; and that he did not speak up at trial regarding his desire that his trial counsel move for a mistrial because he

believed he did not have the right to speak except through his attorney.

Defendant's trial counsel likewise testified at the MAR hearing, stating that Defendant did not insist or demand that he move for a mistrial; that he thought that the trial was going well; that he told Defendant that they were in as good of a position as could be expected at that point; that he told Defendant that he did not think they would win a motion for mistrial; and that Defendant deferred to him with respect to the decision not to move for a mistrial.

Judge Boner entered a written judgment, with findings and conclusions, denying the MAR.

Both parties in their briefs acknowledge that our standard of review relative to an order denying an MAR is "whether the findings of fact are supported by the evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court." *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982).

On appeal, Defendant challenges two of Judge Boner's findings. However, there is evidence to support both findings; and, therefore, Defendant's arguments are overruled. First,

Defendant challenges Judge Boner's finding concerning the testimony of Mr. Maye's mother. Specifically, Judge Boner found that Mr. Maye's mother confirmed the juror's recollection of their conversation. Regarding the juror's recollection, Judge Boner's order contains an unchallenged finding that the juror admitted having a conversation with Mr. Maye's mother; that the conversation was about clothing; and that the conversation did not reference the trial in any way. While the recollection of Mr. Maye's mother may not have been identical to the recollection of the juror regarding the conversation, our review of the transcript shows that the differences are trivial; and that Mr. Maye's mother did confirm the juror's recollection that they spoke about the attire of a passerby and that they did not talk about anything to do with the trial. Accordingly, we sustain Judge Boner's finding.

Second, Defendant challenges Judge Boner's finding that Defendant did not insist that his trial attorney move for a mistrial but that he had deferred to the decision of his trial counsel. While there is conflicting evidence on this point, the testimony of Defendant's trial counsel at the MAR hearing is sufficient to sustain this finding.

Defendant also challenges two conclusions of law, which this Court reviews *de novo*. *State v. Graham*, 200 N.C. App. 204, 214, 683 S.E.2d 437, 444 (2009). First, Defendant argues that the findings "are insufficient to support the trial court's conclusion of law that [Defendant] was not denied trial by a fair and impartial jury as guaranteed by [the North Carolina and Federal Constitutions]." Specifically, Defendant argues that he had reached an impasse with his trial counsel about moving for a mistrial and that he "could not trust [the juror] after her conversation with the biased and unforthcoming [mother of Mr. Maye]." Regarding the supposed impasse between Defendant and his trial counsel, we are bound by Judge Boner's finding that Defendant deferred to his trial counsel concerning the issue, a finding which is supported by the testimony of Defendant's trial counsel. Regarding Defendant's argument that he could not trust the juror, there was no evidence that the juror was biased or otherwise incapable of impartiality. Rather, as Judge Boner found, Judge Edwards questioned both the juror and Mr. Maye's mother regarding the incident and there was no indication that any issue regarding the trial was discussed. In *State v. Johnson*, our Supreme Court stated that "[t]he circumstances must be such as not merely to put suspicion on the verdict, because

there was an opportunity and a chance for misconduct, but that there was in fact misconduct." 295 N.C. 227, 234, 244 S.E.2d 391, 396 (1978). Further, the Court stated that "[c]learly, a conversation between a juror and a third party which was of a harmless character, unrelated to the matter in issue, and not tending to influence or prejudice the jury in their verdict, will not afford cause for a new trial." *Id.* at 234, 244 S.E.2d at 395.

Second, Defendant argues that Judge Boner's findings do not support the conclusion that Defendant was not denied his right to effective assistance of counsel. Specifically, Defendant argues that his counsel was ineffective by failing to move for a mistrial. We disagree. Our Supreme Court has held that to establish an ineffective assistance of counsel claim, a defendant must show that his counsel committed an error and that "there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 248 (1985).

In the present case, Judge Boner found that the conversation between the juror and Mr. Maye's mother did not contain any reference to any issue concerning the trial

whatsoever and that it was "highly unlikely" that Judge Edwards would have granted a mistrial had a motion been made. These findings support Judge Boner's conclusion that Defendant did not receive ineffective assistance of counsel. *See Johnson*, 295 N.C. at 234, 244 S.E.2d at 396 (holding that "[g]enerally speaking, neither the common law nor statutes contemplate as ground for a new trial a conversation between a juror and a third person *unless it is of such a character as is calculated to impress the case upon the mind of the juror in a different aspect than was presented by the evidence in the courtroom, or is of such a nature as is calculated to result in harm to a party on trial*") (emphasis in original). Therefore, assuming, *arguendo*, that the decision by Defendant's trial counsel not to move for a mistrial was error, Defendant cannot show that, but for the error, it is reasonably probable that the trial court would have granted the motion.

Accordingly, we hold that Judge Boner did not err by denying Defendant's MAR.

### B. Indictment

In Defendant's final argument, he contends that the indictment charging him with murder was fatally defective because it did not sufficiently allege the essential elements of

first-degree murder. Specifically, Defendant argues that the short-form indictment that was used only alleged the elements of second-degree murder. Defendant, however, acknowledges in his brief that our Supreme Court has held that the language in the short-form indictment is not defective, *see, e.g.*, *State v. Braxton*, 352 N.C. 158, 175, 531 S.E.2d 428, 437-38 (2000), and that he is raising the issue "for preservation purposes so as not to be considered to have been abandoned[.]" As this Court is bound to follow the holdings of our Supreme Court "until otherwise ordered by [] [our] Supreme Court[,]" *Andrews v. Haygood*, 188 N.C. App. 244, 248, 655 S.E.2d 440, 443 (2008), we hold that the indictment in this case was sufficient.

## III. Conclusion

We have thoroughly reviewed the record and the arguments of the State and of Defendant, and we find no error.

NO ERROR.

Judge ERVIN and Judge McCULLOUGH concur.

Report per Rule 30(e).