Leonard LACY, Petitioner,

v.

Harold F. GABRIEL, Respondent.

Civ. A. No. 82–1010–G.

United States District Court,
D. Massachusetts.

July 27, 1983.

Michael B. Roitman, Asst. Atty. Gen., Boston, Mass., for petitioner.

Benjamin Hiller, Goldstein, Pressman, Stern & Hiller, Cambridge, Mass., for respondent.

## MEMORANDUM AND ORDER DENYING PETITION FOR HABEAS CORPUS

GARRITY, District Judge.

Leonard Lacy was convicted of first degree murder in December of 1974. During the trial the government introduced into evidence two jail cards, each bearing a photograph of defendant, for the purpose of proving his appearance at particular times. The picture on Exhibit 4 showed the defendant wearing jail clothes with a jail identification number across his chest. That number was ordered excluded and masked. Exhibit 20 bore references to "Brighton District Court" and "$25,000 bail" on the front of the card, and references to "Walpole, yes" and "Norfolk, yes" on the back.[1] Upon defendant's objection that these entries were prejudicial, the trial judge ordered them also excluded and masked. Six years later, in October of 1980, one of the jurors for Lacy's trial revealed that during deliberations he had unmasked those excluded portions of Exhibits 4 and 20, and that he and other jurors had discussed the excluded information prior to reaching their verdict. Based upon that juror's representations, Lacy filed a motion for a new trial. The Superior Court of the Commonwealth of Massachusetts denied Lacy's motion, finding that although the juror did unmask those excluded portions of Exhibits 4 and 20, and although the jury did discuss that information, the unmasked information was "merely cumulative" of information properly admitted with other exhibits.

The matter is now before this court on Lacy's petition for habeas corpus. The petitioner has argued that the juror's misconduct in unmasking excluded portions of a trial exhibit rendered his trial fundamentally unfair and denied him the due process of law guaranteed by the federal constitution. The court has also heard and considered arguments on the issue of whether the juror's misconduct denied petitioner's Sixth Amendment right to confront evidence against him as made applicable to the state by the Fourteenth Amendment.[2] If petitioner meets his burden of demonstrating

---

1. Walpole and Norfolk are Massachusetts prisons.

2. Respondent has argued that the Sixth Amendment theory of constitutional error was not presented during petitioner's journey through the state court system, and that this court may not properly consider such unexhausted claim. 28 U.S.C. § 2254(b). The court has rejected this argument, *see* Memorandum of Decision and Notice of Hearing, June 13, 1983, C.A. 82–1010–G, on the grounds that because this court's consideration of the Sixth Amendment claim would present the same ultimate question for disposition as a claim which petitioner did present in state court, *viz.*, whether the jury's consideration of the excluded information was harmless beyond a reasonable doubt, and found the Sixth Amendment claim to be "exhausted" for the purposes of 28 U.S.C. § 2254(b). *See Picard v. Connor,* 1971, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (principles of comity which § 2254 seeks to protect may be satisfied if the federal and state courts rule on the same "ultimate question for disposition ... despite variations in the legal theory or factual allegations urged in its support.").

constitutional error,[3] the petition must be granted unless the government can prove that the error was "harmless beyond a reasonable doubt." *Chapman v. California,* 1967, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705; *Morgan v. Hall,* 1 Cir.1978, 569 F.2d 1161, 1166; *United States v. Bruscino,* 7 Cir.1981, 662 F.2d 450, 458.

### Constitutional Error

■ The constitutional error in this case is more properly analyzed in terms of petitioner's right of confrontation rather than his right of due process. This latter right raises the question of whether the entire proceedings were rendered "fundamentally unfair" by the challenged event, *Donnelly v. DeChristoforo,* 1974, 416 U.S. 637, 645, 94 S.Ct. 1868, 1872, 40 L.Ed.2d 431, and serves as an appropriate mode of analysis only when a specific constitutional right, such as that of confrontation, is not implicated. *Id.,* at p. 643, 94 S.Ct. at 1871; *see also Davis v. Campbell,* 8 Cir.1979, 608 F.2d 317, 319 ("A justiciable federal issue is presented in a habeas corpus proceeding only where trial errors infringe upon a specific constitutional right or are so prejudicial as to amount to denial of due process.")[4]

■ The court finds that the juror's unmasking of Exhibits 4 and 20, and the jury's consideration of evidence excluded at trial, violated petitioner's constitutional right to confront evidence against him. Once a defendant proves that a jury has considered information not admitted as evidence during the trial and properly developed by the adversarial process, courts have generally found that the constitutional right of confrontation has been abridged. *Parker v. Gladden,* 1966, 385 U.S. 363, 364, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (bailiff's statement to a juror and overheard by other jurors denied defendant's Sixth Amendment rights); *United States v. Bruscino,* 7 Cir. 1981, 662 F.2d 450, 458 (jury consideration of document not admitted into evidence and inadvertently brought into jury room was denial of defendant's Sixth Amendment right to confrontation, cross-examination, and assistance of counsel with respect to the extraneous information); *Gibson v. Clanon,* 9 Cir.1980, 633 F.2d 851 (juror's consultation of encyclopedia indicating rarity of defendant's blood-type violated right of confrontation). It is particularly clear that Lacy's right of confrontation was violated in this case because it was upon his objection at trial that the judge excluded the evidence in question, and because that evidence related to prior criminal involvement, the presentation of which before a jury is intricately regulated by the Federal Rules of Evidence. At a minimum, petitioner lost his opportunity to argue to the jury about the evidence so as to minimize its prejudicial impact.

### Prejudice

■ Having found constitutional error, the court must determine whether the error was harmless beyond a reasonable doubt. *Chapman, supra,* at p. 24, 87 S.Ct. at p. 828. It is, of course, the government's burden to disprove any reasonable possibility of prejudice. *Id.* In determining whether the constitutional error was harmless beyond a reasonable doubt, "a reviewing court must assess the record as a whole to determine the probable impact of the improper evidence on the jury. [Citations omitted.] The prejudicial effect of the improper conduct must be weighed against the weight of the properly admitted evidence." *Morgan v. Hall,*

---

**3.** Petitioner raised two other claims of constitutional error before Magistrate Collings. The magistrate recommended that the petition be denied on these grounds, and the petitioner is not pressing them before this court.

**4.** The choice of which mode of analysis should be pursued is not a mere academic exercise, but has an important implication for allocating the burden of persuasion in this case. If the issue is framed in terms of a specific right guaranteed by the Constitution, then once petitioner proves a constitutional violation, respondent bears the burden of disproving prejudice beyond a reasonable doubt. *Chapman, supra,* at p. 24, 87 S.Ct. at p. 828. If the constitutional violation is analyzed according to the rather vague notions of due process and fundamental fairness, however, then it is the petitioner who must prove substantial prejudice as the essence of the constitutional violation.

*supra,* at p. 1166. The prejudicial effect must be evaluated in the context of the "average" juror, or a "reasonable" juror, rather than attempting to measure the actual effect on the jurors who were involved. This reflects the fundamental policy that jurors may not impeach their verdicts subjectively; their thought processes in reaching a verdict are not properly matters for judicial review. *See* Fed.R.Evid. 606(b). "Objective facts, therefore, become the focus of the inquiry." *United States v. Castello,* W.D.Tex.1981, 526 F.Supp. 847, 850.

In state court proceedings regarding Lacy's motion for a new trial, the judge found after hearing the offending juror's testimony that at the time he unmasked the excluded portions of the jail cards, eleven of the jurors had voted for conviction, while only he, the juror who unmasked the exhibits, was holding out for acquittal. The state judge further found that after the excluded evidence was unmasked, the jury discussed it, and subsequently voted unanimously for conviction. The court presumes these factual findings to be correct and adopts them. *See* 28 U.S.C. § 2254(d); *Sumner v. Mata,* 1981, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722.

■ Despite these findings of fact, the state court concluded that the unmasked evidence was "merely cumulative" of evidence properly admitted and implicitly found that the jury's consideration of the extraneous information, beyond a reasonable doubt, did not affect the verdict. *See Commonwealth v. Fidler,* 377 Mass. 192, 201, 385 N.E.2d 513, 519 ("At the hearing, [defendant] bears the burden of demonstrating that the jury were in fact exposed to the extraneous matter . . . . If the judge finds that the extraneous matter was introduced, the burden shifts to the Commonwealth to show beyond a reasonable doubt that [defendant] was not prejudiced by the extraneous matter."). Harmlessness, however, is a conclusion of law, and therefore not entitled to the presumption of correctness required by 28 U.S.C. § 2254(d), *see Sumner v. Mata,* 1982, 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (*Sumner II*).

This court must conduct a *de novo* inquiry into the issue of harmlessness.

■ The court has reviewed the entire transcript of Lacy's trial, and finds copious evidence of his guilt. George Cross, resident of the victim's apartment building, testified that a black man, approximately thirty years old and wearing tan or mustard-colored high heel boots, came to the front door of the building, showed him what appeared to be a senior citizen's identification card for the MBTA bearing his picture, and claimed to be conducting a survey of senior citizens. Mr. Cross identified that man as the defendant, Leonard Lacy. Believing that he did not have the authority to let Lacy into the building, Cross then summoned the building's caretaker, Arthur Redgate, from his third floor apartment.

Redgate testified that he came down the stairs and met the visitor at the front door. The man showed his identification card to Redgate, and repeated the claim that he wanted to take a survey of senior citizens. Redgate identified the man as the defendant, Leonard Lacy. Redgate then escorted Lacy upstairs to the third floor, and brought him to the room of the victim, an eighty-year-old woman who, Redgate believed, would appropriately be included in the senior citizen survey.

A third witness, John Frost, was also present when the visitor arrived. He lived on the first floor of the building, and was in the hallway at the time George Cross answered the door. Frost also testified that the visitor was wearing high heel boots. He identified the man as the defendant, Leonard Lacy.

About ten minutes after Lacy entered the victim's apartment, Redgate left his own apartment and found the victim crawling in the hallway crying for help. She was severely beaten about the face, bleeding, and missing several teeth. George Cross testified that approximately ten minutes after Redgate led Lacy up to the victim's apartment, he heard the loud noise of someone with heavy shoes running downstairs and out the door.

Although the beating occurred on December 14, 1973, Lacy was not arrested until December 24, 1973, shortly after he gained entry into another woman's apartment by again using the ruse of the senior citizen's identification card. Marion Horgan testified that a tall and slim black man had come to her house on December 22. He was wearing yellow high heel boots and a knee-length brown leather coat. He showed her the senior citizen identification card, and made an appointment to see her again on December 24. Horgan testified that she had seen this same man about a month earlier, and remembered him because of his yellow high heel boots and the peculiar sound they made when he walked. She identified that man as the defendant, Leonard Lacy.

The jury, thus, had the eyewitness identification of Lacy as the victim's visitor at her apartment ten minutes before she was beaten. These identifications were corroborated by a fourth witness, who identified Lacy as the man who employed the same ruse to gain entry into her apartment, and who wore the same type of boots, as did the man who entered the victim's apartment ten minutes before she was found beaten.

The petitioner has argued, however, that the credibility of the witnesses is open to question. He asserts that they were elderly, saw the murderer for only a short time, and were coaxed into identifying Lacy as the murderer by the artifice of police investigators. Upon review of the trial transcript, the court finds no basis for a reasonable inference that the witnesses were improperly influenced by the police. As for the other issues of credibility, the court does not have the benefit of having observed the witnesses while they testified. Nevertheless, we do have the objective evidence that eleven of the twelve jurors were convinced of defendant's guilt beyond a reasonable doubt before the extraneous information was revealed. This is, in our opinion, the strongest possible indication, apart from the independent evaluation of the evidence which the court has just undertaken, that the properly admitted evidence alone, beyond a reasonable doubt, would have convinced a reasonable juror of defendant's guilt.

We do not hold that the error was trivial, or under other circumstances would not warrant habeas relief. If the extrinsic information had intruded into the jury's deliberations at a point when, for example, the jury was more divided on the issue of defendant's guilt, the court would be presented with a more difficult question. *See, e.g., United States v. Castello, supra,* at p. 850 (factors to consider in determining whether extrinsic evidence was harmless). Under the circumstances of this case, however, in which three witnesses identified Lacy as the intruder who visited the victim at the scene of the crime ten minutes before she was found severely beaten, and in which eleven of the twelve jurors were convinced of defendant's guilt based on this and other evidence prior to the intrusion of the excluded evidence, the court finds that respondent has met its burden of showing that the constitutional error was harmless beyond a reasonable doubt.

The petition is denied.