STATE OF NORTH CAROLINA v. FREDERICK LYLES

No. 8811SC690

(Filed 20 June 1989)

1. **Criminal Law § 126.3— jurors' impeachment of verdict—exposure to extraneous evidence**

Jurors could testify to impeach their verdict in an armed robbery case pursuant to N.C.G.S. § 15A-1240 and Rule of Evidence 606(b) where one juror removed paper from the bottom of defendant's photograph in a photographic lineup to reveal that it was taken at the Wilson Police Department on 7 December 1981, and the jurors discussed the writing on the photograph as evidence that defendant had been in the area in December 1981 contrary to testimony by defendant's alibi witnesses. The writing on the photograph was "extraneous information" within the meaning of Rule 606(b) and was a "matter not in evidence" which implicated defendant's confrontation right within the meaning of N.C.G.S. § 15A-1240(c)(1).

STATE v. LYLES

[94 N.C. App. 240 (1989)]

2. **Criminal Law § 126.3 — jurors' impeachment of verdict — exposure to extraneous evidence — effect on verdict — evidence properly excluded**

The judge hearing a motion for appropriate relief properly excluded juror testimony regarding how extraneous information considered by the jury during its deliberations affected the jury's decision. While jurors may testify regarding the objective events listed in N.C.G.S. § 15A-1240(a) and N.C.G.S. § 8C-1, Rule 606(b) as exceptions to the anti-impeachment rule, those statutes prohibit jurors from testifying to the subjective effect those matters had on their verdict.

3. **Criminal Law § 101.2 — jury's exposure to extraneous evidence — denial of right to confrontation**

Defendant's constitutional right to confrontation was violated in an armed robbery case by the jury's exposure to extraneous evidence during deliberations when a juror removed paper covering the bottom of defendant's photograph in a photographic lineup to reveal that the photograph was taken at the Wilson Police Department on 7 December 1981, and the writing on the photograph contradicted testimony by defendant's alibi witnesses that defendant lived in another state from 1980 to 1984 and did not return to North Carolina during that time. Sixth Amendment to the United States Constitution; Art. I, § 23 of the North Carolina Constitution.

4. **Constitutional Law § 65; Criminal Law § 101.2 — jury's exposure to extraneous evidence — denial of constitutional right to confrontation — burden of proving harmless error**

Where the evidence established that defendant's Sixth Amendment right of confrontation was violated by the jury's improper consideration of extraneous evidence, the trial judge erred by placing the burden of showing prejudice upon defendant. Rather, the violation of a right guaranteed by the United States Constitution was presumed to be prejudicial, and the burden was on the State to show that it was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b).

5. **Constitutional Law § 65; Criminal Law § 101.2 — jury's exposure to extraneous evidence — prejudicial error**

The jury's exposure to extraneous evidence during deliberations when a juror removed paper covering writing on a mug shot of defendant revealing that the photograph had been

taken at the Wilson Police Department at a time defendant's alibi witnesses testified he was living in another state constituted prejudicial error since there was more than a reasonable possibility that an average juror could have been affected by the information revealed in the photograph.

APPEAL by defendant from *J. B. Allen, Jr., Judge.* Order entered 18 May 1987 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 14 February 1989.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Randy Meares and Assistant Attorney General D. David Steinbock, for the State.*

*Office of the Appellate Defender, by Malcolm Ray Hunter, Jr., for defendant-appellant.*

BECTON, Judge.

Following his conviction of robbery with a firearm, the defendant, Frederick Lyles, filed a Motion for Appropriate Relief, seeking a new trial on the ground that his constitutional right of confrontation had been violated by the jury's exposure to certain extraneous evidence. Evidence presented at the hearing on defendant's motion showed that the jury members tampered with a photographic exhibit during deliberations. As a result, they were exposed to information not introduced in evidence which contradicted defendant's alibi witnesses. Until that information was revealed, the jury had been split on the issue of defendant's guilt. The hearing judge denied defendant's Motion for Appropriate Relief, and this court granted certiorari. For the reasons that follow, we reverse, and order that defendant receive a new trial.

I

The relevant facts are as follows: Two men robbed a jewelry store in Kenly, North Carolina, in November 1982. Three years later, in November 1985, eyewitnesses identified defendant from a photographic line-up as one of the robbers. Based on this identification, defendant was indicted and tried for robbery with a dangerous weapon.

At trial, the State's case rested solely on the eyewitnesses' identification of defendant. The photographic line-up used by the witnesses in 1985 was introduced in evidence as State's Exhibit 1.

STATE v. LYLES

[94 N.C. App. 240 (1989)]

In its original condition, the exhibit consisted of several "mug shots," of defendant and five other men, taped to a manila folder, with paper taped over the lower portion of the photographs to conceal writing that appeared there. To challenge the State's identification testimony, defendant presented evidence that he had been in another state when the robbery was committed and that he differed in several respects from the eyewitnesses' description of the perpetrator.

The jury deliberated for four hours before it asked to see Exhibit 1, the photographic line-up. Neither party objected, and the exhibit was delivered to the jury room. While viewing the exhibit, one of the jurors peeled back the paper over the bottom of defendant's photograph, revealing the words, "Police Department, Wilson, North Carolina — 12291, 12-07-81." The jurors discussed the writing on the photograph as evidence that defendant had been in the area in December 1981, a fact which, if true, contradicted the testimony of defendant's alibi witnesses that he lived in another state from 1980 to 1984 and had not returned to North Carolina during that time. Less than one hour after this information was revealed, the jury returned a unanimous guilty verdict.

Following his conviction, and while an appeal was pending before this court, defendant filed his Motion for Appropriate Relief. We ordered the case remanded to the superior court for an evidentiary hearing on the motion.

At the hearing, eleven of the twelve jurors testified. All admitted seeing and discussing the information revealed on the photograph. The hearing judge sustained objections to questions concerning the effect of the information on the jury's verdict, but allowed that testimony to be elicited for purposes of the record. The hearing judge concluded as a matter of law that defendant failed to show he was prejudiced by the jury's actions and that, therefore, he was not entitled to the relief sought.

Defendant appealed, and this court granted certiorari. Defendant's primary contentions on appeal are: (1) that he was entitled to a new trial because his constitutional right of confrontation was violated by the jury's consideration of information not in evidence; (2) that the hearing judge erred by excluding evidence of the effect the information had upon the jury's verdict; and (3) that the hearing judge improperly placed the burden of showing prej-

udice upon the defendant. Given our disposition of this appeal, we will not address defendant's remaining assignments of error.

## II

**[1]** We must first decide whether this was a case in which jurors could testify to impeach their verdict. We conclude that it was.

Generally speaking, once a verdict is rendered, jurors may not impeach it. *State v. Cherry*, 298 N.C. 86, 100, 257 S.E. 2d 551, 560 (1979), *cert. denied*, 446 U.S. 941, 64 L.Ed. 2d 796 (1980). Substantial policy considerations supporting this anti-impeachment rule include freedom of deliberation, stability and finality of verdicts, and protection of jurors from harassment and embarrassment. *See* N.C. Gen. Stat. Sec. 8C-1, comment to R. Evid. 606 (1988); *Chandler v. U-Line Corp.*, 91 N.C. App. 315, 322-23, 371 S.E. 2d 717, 721-22, *disc. rev. denied*, 323 N.C. 623, 374 S.E. 2d 583 (1988); *see generally*, Weinstein, 3 *Weinstein's Evidence* para. 606[03] (1987). However, harsh injustice has sometimes resulted from the view that jury verdicts are beyond challenge. Thus, as an "accommodation between policies designed to safeguard the institution of trial by jury and policies designed to insure a just result in [an] individual case," certain exceptions to the rule have been carved out. *Weinstein's Evidence* para. 606[03].

Section 15A-1240 of the General Statutes and Rule 606(b) of the Rules of Evidence provide limited exceptions to the anti-impeachment rule. Section 15A-1240 allows impeachment of a verdict only in a criminal case, and only when (1) the verdict was reached by lot; (2) a juror was subjected to bribery, intimidation, or attempted bribery or intimidation; or (3) *"matters not in evidence . . . came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him. . . ."* N.C. Gen. Stat. Sec. 15A-1240 (1988) (emphasis added). Rule 606(b), which applies in both criminal and civil cases, provides that a juror is competent to testify when the validity of a verdict is challenged, but only "on the question [1] *whether extraneous prejudicial information was improperly brought to the jury's attention* or [2] whether any outside influence was improperly brought to bear upon any juror." N.C. Gen. Stat. Sec. 8C-1, R. Evid. 606(b) (1988) (emphasis added). *See generally*, Brandis, 1 *Brandis on North Carolina Evidence* Sec. 65 (3d ed. 1988).

We hold that the writing on defendant's photograph was both "extraneous information" within the meaning of Rule 606(b) and was a "matter not in evidence" which implicated defendant's confrontation right within the meaning of Section 15A-1240(c)(1) because it was "information dealing with the defendant [and] the case . . . being tried . . . which . . . reache[d] a juror without being introduced in evidence." *State v. Rosier*, 322 N.C. 826, 832, 370 S.E. 2d 359, 363 (1988). Our Supreme Court made it clear in *Rosier* that once the jury receives extraneous information pertinent to the defendant or the case, the jurors are competent to impeach their verdict. *Id.* The *Rosier* court reached a different result than the one we reach today because the information which came to the jury's attention, although not introduced in evidence, was not "extraneous" since it did not concern *that defendant* or the evidence in *that case*. *Id.*

### III

**[2]** Defendant contends that the hearing judge erred by excluding juror testimony regarding how the extraneous information affected the jury's decision. We disagree.

Defendant correctly points out that the official comment to Rule 606 suggests that a juror is competent to testify regarding the effect of extraneous prejudicial information upon the jurors' mental processes. The comment states in relevant part:

> The exclusion [in Rule 606(b)] is intended to encompass testimony *about mental processes* and any testimony about any matter or statement occurring during the deliberations, *except that testimony* of either of these two types *can be admitted if it relates to extraneous prejudicial information or improper outside influence.* . . . G.S. 15A-1240 . . . should be amended to conform to Rule 606.

N.C. Gen. Stat. Sec. 8C-1, comment to R. Evid. 606 (1988). *See also Chandler*, 91 N.C. App. at 322, 371 S.E. 2d at 721 (citing *comment* to R. Evid. 606 for quoted principle). It appears, however, that the comment inadvertently misstates the rule since both Rule 606(b) and Section 15A-1240 unambiguously prohibit inquiry into the effect of *anything* occurring during deliberations upon jurors' minds.

Rule 606(b) plainly states that "*a juror may not testify as to . . . the effect of anything upon his or any other juror's mind*

or emotions as influencing him to assent to or dissent from the verdict . . . *or concerning his mental processes* in connection therewith. . . ." N.C. Gen. Stat. Sec. 8C-1, R. Evid. 606(b) (emphasis added). Similarly, Section 15A-1240(a) provides that *"no evidence may be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes* by which the verdict was determined." N.C. Gen. Stat. Sec. 15A-1240(a) (emphasis added). Thus, it is clear that jurors may testify regarding the *objective events* listed as exceptions in the statutes, but are prohibited from testifying to the *subjective effect* those matters had on their verdict. *See Smith v. Price,* 315 N.C. 523, 535-36, 340 S.E. 2d 408, 416 (1986) (Rule 606(b) permits juror testimony regarding "the *fact* that extraneous prejudicial information was acquired by [a] juror," but prohibits testimony as to "the *effect* . . . this information had upon her vote") (emphasis added); *accord Mattox v. United States,* 146 U.S. 140, 148-49, 36 L.Ed. 917, 921 (1892) (established long-standing rule that "[a] jur[or] may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated on his mind"); *see also Weinstein's Evidence* para. 606[04] and cases cited therein.

Finally, although Rule 606(b) is broader in some respects than Section 15A-1240, we do not agree with any suggestion that the two statutes conflict. In our view, the exceptions to the anti-impeachment rule listed in Section 15A-1240 are designed to protect the same interests as, and are entirely consistent with, the exceptions in Rule 606(b). *Accord Brandis* Sec. 65, n.95 ("[I]t seems that with the possible exception of 'by lot,' everything admissible under 15A-1240 is also admissible under the Rule").

Although official commentary is useful to determine legislative intent when an ambiguity exists, it cannot control when, as here, the language of the statute itself is clear and unambiguous. *Cf. In re Forsyth County,* 285 N.C. 64, 71, 203 S.E. 2d 51, 55 (1974) (statute controls when language in caption conflicts with clear language in statute). Thus, to the extent that the comment contradicts the plain language of Rule 606(b) and Section 15A-1240 and is inconsistent with the Supreme Court's statement of the current rule in *Smith,* we decline to follow the comment.

Accordingly, we hold that the hearing judge did not err by excluding testimony regarding jurors' subjective reactions to the written information appearing on defendant's photograph.

## IV

[3] Defendant next contends that the jury's exposure to the information on the photograph violated his constitutional right of confrontation. We agree.

A criminal defendant's right to confront the witnesses and evidence against him is guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 23 of the North Carolina Constitution. A fundamental aspect of that right is that a jury's verdict must be based on *evidence produced at trial*, not on extrinsic evidence which has escaped the rules of evidence, supervision of the court, and other procedural safeguards of a fair trial. *See, e.g., Parker v. Gladden,* 385 U.S. 363, 364, 17 L.Ed. 2d 420, 422-23 (1966); *Turner v. Louisiana,* 379 U.S. 466, 472-73, 13 L.Ed. 2d 424, 429 (1965) (rights conferred by the Sixth Amendment "necessarily impl[y] at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel").

In this case, it is undisputed that information about the defendant, which had not been admitted in evidence, came to the attention of the jury and that this evidence directly contradicted defendant's alibi witnesses. Because this exposure occurred during the jury's deliberations, defendant had no opportunity to challenge the evidence by cross-examination or to minimize its impact in his closing argument or through a curative instruction by the trial judge. Moreover, the evidence implied that defendant had prior criminal involvement, and the jury was allowed to draw this inference notwithstanding that this is a subject intricately regulated by the rules of evidence.

Under these circumstances, the jury's exposure to the extraneous information clearly abridged defendant's constitutional right of confrontation. *Accord Parker,* 385 U.S. at 364, 17 L.Ed. 2d at 420, 422-23 (bailiff told jurors that defendant was "wicked"); *United States v. Bruscino,* 662 F. 2d 450, 458 (7th Cir. 1981) (jury exposed to extraneous materials suggesting defendant's involvement with "Mexican Mafia"); *Bulger v. McClay,* 575 F. 2d 407, 411 (2d Cir. 1978), *cert. denied,* 439 U.S. 915, 58 L.Ed. 2d 263 (1978) (jurors read newspaper story giving defendant's address which discredited his explanation for being near scene of crime); *Farese v. United States,* 428 F. 2d 178, 181-82 (5th Cir. 1970) (jury discovered cash

in pocket of shirt inside attache case introduced in evidence); *Lacy v. Gabriel*, 567 F. Supp. 467, 469 (D. Mass. 1983), *aff'd*, 732 F. 2d 7 (1st Cir. 1984) (jurors unmasked portions of photographs, revealing defendant's prior crimes). *See also Smith*, 315 N.C. at 536, 340 S.E. 2d at 416 (recognizing that verdict may be impeached in criminal case when confrontation right is implicated); *cf. State v. Johnson*, 295 N.C. 227, 235, 244 S.E. 2d 391, 396 (1978) (bailiff's remarks to jurors were of nature to require a new trial as matter of law; not analyzed on confrontation grounds). Our remaining question is whether this violation sufficiently prejudiced defendant to warrant granting him a new trial.

V

[4] We agree with defendant's final contentions that the hearing judge erred by placing the burden of showing prejudice on the defendant, and that, under the circumstances, the judge erred by denying him a new trial.

Generally, a new trial motion is addressed to the sound discretion of the trial judge, and unless his ruling is clearly erroneous or an abuse of discretion, it will not be disturbed on appeal. *See, e.g., Johnson*, 295 N.C. at 234, 244 S.E. 2d at 396. When, however, the motion is based on a constitutional right, the ruling becomes a question of law, fully reviewable on appeal. *See State v. Gardner*, 322 N.C. 591, 593, 369 S.E. 2d 593, 596 (1988). Here, defendant's motion was grounded on—and the evidence presented at the hearing unquestionably established—a violation of his Sixth Amendment right of confrontation.

We hold that the hearing judge erred by placing the burden of showing prejudice upon defendant. Under North Carolina law, the violation of any right guaranteed by the United States Constitution is presumed to be prejudicial, and the *burden is then on the State* to show that it was harmless beyond a reasonable doubt. N.C. Gen. Stat. Sec. 15A-1443(b) (1988). Cases based upon federal Rule 606(b) are in accord with this standard. *See, e.g., United States v. Perkins*, 748 F. 2d 1519, 1533-34 (11th Cir. 1984); *United States v. Hilliard*, 701 F. 2d 1052, 1063-64 (2d Cir. 1983), *cert. denied*, 461 U.S. 958, 77 L.Ed. 2d 1318 (1983); *United States v. Bassler*, 651 F. 2d 600, 603 (8th Cir. 1981) (once it is established that extraneous material reached jury, a presumption of prejudice arises which may be overcome only by a showing that the error was harmless beyond a reasonable doubt).

STATE v. LYLES

[94 N.C. App. 240 (1989)]

[5]   We turn now to the question whether the evidence presented at the hearing established that the error was "harmless beyond a reasonable doubt."

An error of constitutional magnitude will be held to be harmless beyond a reasonable doubt only when "the court can declare a belief . . . that there is *no reasonable possibility that the violation might have contributed to the conviction." State v. Lane*, 301 N.C. 382, 387, 271 S.E. 2d 273, 277 (1980) (emphasis added). In the context of jury exposure to extraneous information, because inquiry into jurors' mental processes is prohibited, the test for determining harmlessness generally has been whether there was "no reasonable possibility" that *"an average juror"* could have been affected by it. *See, e.g., Miller v. United States*, 403 F. 2d 77, 84 (2d Cir. 1968) ("[w]here an extraneous influence is shown, the court must apply an objective test, assessing for itself the likelihood that the influence would affect a typical juror"); *Lacy*, 567 F. Supp. at 469 (because jurors' thought processes "are not properly matters for judicial review," the prejudicial effect of extraneous information "must be evaluated in the context of the 'average' juror, or a 'reasonable' juror, rather than attempting to measure the actual effect on the jurors who were involved"); *State v. Poh*, 116 Wis. 2d 510, 529, 343 N.W. 2d 108, 116-19 (1984).

In assessing the impact of the extraneous evidence on the mind of the hypothetical "average juror," the court should consider: (1) the nature of the extrinsic information and the circumstances under which it was brought to the jury's attention; (2) the nature of the State's case; (3) the defense presented at trial; and (4) the connection between the extraneous information and a material issue in the case. *See Poh*, 116 Wis. 2d at 530, 343 N.W. 2d at 119. Applying these factors to the case before us, we conclude that there was more than a reasonable possibility that an average juror could have been affected by the information revealed on the photograph, and, therefore, that the State failed to show that the error was harmless beyond a reasonable doubt.

Here, the implication of the words printed at the bottom of the official police department "mug shot" was that defendant had been in Wilson in 1981, and that he had been charged with a crime while there. Not only would this unauthenticated evidence have been inadmissible at trial as hearsay and incompetent character evidence, but, more importantly, the evidence *went to the heart of*

*defendant's alibi defense.* The State's case rested on the identification of defendant as one of the perpetrators; defendant's challenge to that evidence was that he lived out-of-state for several years, including the year the robbery was committed. In all likelihood, defendant's alibi and the credibility of the witnesses who testified in his behalf were undermined by the jury's exposure to this evidence. Moreover, the jury, which had been split as to defendant's guilt after four hours of deliberation, reached the unanimous guilty verdict less than one hour after the information came to their attention. In circumstances such as this, the possibility that the jury's verdict was tainted by exposure to the extraneous evidence was obvious. Accordingly, we hold that defendant is entitled to a new trial.

In summary, we hold that: (1) the jurors were competent to impeach their verdict within the terms of Rule 606(b) and Section 15A-1240(c)(1); (2) the hearing judge did not err in excluding evidence of the effect the extraneous information had on the verdict; (3) the jury's exposure to the information violated defendant's constitutional right of confrontation; (4) the hearing judge erred in putting the burden on defendant to establish prejudice; and (5) the jury's exposure to the information was not harmless beyond a reasonable doubt. The order denying defendant's Motion for Appropriate Relief is

Reversed; new trial.

Judges PARKER and ORR concur.