STATE OF NORTH CAROLINA
v.
DEMARIO JAQUINTA ROLLINS

No. COA12-259

Filed 4 December 2012

**Criminal Law—motion for appropriate relief—general allegations—juror misconduct**

The trial court did not abuse its discretion in a common law robbery and misdemeanor assault inflicting serious injury case by failing to hold an evidentiary hearing pursuant to defendant's motion for appropriate relief. There was insufficient evidence to

**STATE v. ROLLINS**

[224 N.C. App. 187 (2012)]

determine whether juror misconduct occurred as defendant's motion and the affidavit merely contained general allegations and speculation.

Judge HUNTER, Robert C., dissenting.

Appeal by defendant from order entered 29 June 2010 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 29 August 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Stuart M. Saunders, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

BRYANT, Judge.

Where the trial court did not abuse its discretion in failing to hold an evidentiary hearing pursuant to defendant's motion for appropriate relief, we hold no error.

*Facts and Procedural History*

On 19 May 2010, defendant Demario Jaquinta Rollins was convicted of common law robbery and misdemeanor assault inflicting serious injury. On 28 May 2010, defendant filed a motion for appropriate relief ("MAR") pursuant to section 15A-1414 of the North Carolina General Statutes. Defendant alleged that he was entitled to a new trial because he "did not receive a fair trial as a result of a juror watching irrelevant and prejudicial television publicity during the course of the trial, failing to bring this fact to the attention of the parties or the Court, and arguing vehemently for conviction during jury deliberations." Defendant also prayed for an evidentiary hearing on the claim set forth in his MAR. On 12 July 2010, the trial denied defendant's MAR by concluding that it was without merit and that an evidentiary hearing was not required. The trial court's order stated that

> [n]othing in the motion or affidavit indicates which news broadcast the juror supposedly viewed, the degree of attention the juror paid to the news story about the defendant's case, or the extent of any information the juror actually received or remembered from the news broadcast. There is nothing in the motion or affidavit to indicate that the juror shared any of the contents of the

news story with other jurors during the trial or the jury's deliberations. In his affidavit, Mr. Bossard[, a fellow juror,] speculates that the juror must have been influenced by the news broadcast because she was "very outspoken" and "certain of her beliefs" during the jury's deliberations. In his motion, defendant assumes that the juror must have viewed a news broadcast on News 14 Carolina which contained a reference to other crimes the defendant is alleged to have committed after the robbery for which defendant was convicted in this case.

The undersigned judge concludes that the defendant's motion is without merit and does not require an evidentiary hearing.

Defendant appeals from this order.

---

Defendant's sole issue on appeal is whether the trial court erred in denying his MAR without holding an evidentiary hearing in violation of section 15A-1420 of the North Carolina General Statues and according to the holding in *State v. McHone*, 348 N.C. 254, 499 S.E.2d 761 (1998).

N.C.G.S. § 15A-1420 states that "[a]ny party is entitled to a hearing on questions of law or fact arising from the motion and any supporting or opposing information presented unless the court determines that the motion is without merit." N.C.G.S. § 15A-1420(c)(1) (2011). However, defendant's MAR was filed pursuant to N.C.G.S. § 15A-1414 which provides that a defendant may file a MAR asserting that he did not receive a fair and impartial trial within 10 days after entry of judgment. N.C.G.S. § 15A-1414 (2011). We note that "[a]n evidentiary hearing is not required when the motion is made in the trial court pursuant to G.S. 15A-1414, but the court may hold an evidentiary hearing if it is appropriate to resolve questions of fact." N.C.G.S. § 15A-1420(c)(2) (2011). Therefore, "we review the trial court's order denying an evidentiary hearing for abuse of discretion. Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Elliot*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006) (citation and quotations omitted).

Defendant argues that his MAR demonstrated "sufficient particularity to require a hearing on his claim" and that pursuant to the Supreme Court's holding in *McHone*, the trial court erred by denying

him an evidentiary hearing. Defendant's MAR asserted that defendant "did not receive a fair trial as a result of a juror watching irrelevant and prejudicial television publicity during the course of the trial, failing to bring this fact to the attention of the parties or the Court, and arguing vehemently for conviction during jury deliberations." Defendant's contentions of juror misconduct were based on the affidavit of Tom Bossard, a juror on defendant's jury. Tom Bossard stated in his affidavit the following:

> 2. [A]fter the trial was over, while we were in the elevator on the way out of the building, a fellow juror asked me and a couple other jurors whether we had seen the news broadcast on Monday evening. She said there was something related to the case on the news broadcast that she had seen. The other jurors and I responded that we had not seen the news broadcast.
>
> 3. This juror had been fairly quiet . . . throughout the proceedings. It was ironic because she became very outspoken and certain of her beliefs during the deliberations.
>
> 4. She was basically going "head to head" with me throughout our deliberations. . . . Once I heard her mention the news broadcast in the elevator, it made sense to me that that was why she became so adamant. It seemed to me that she was basing everything on that news broadcast.

In *McHone*, the defendant was convicted of two counts of first-degree murder and one count of assault with a deadly weapon with intent to kill inflicting serious injury. The defendant was sentenced to death for each murder and 10 years imprisonment for the assault conviction. *McHone*, 348 N.C. at 255, 499 S.E.2d at 761-62. The *McHone* defendant filed an initial MAR and thereafter, a supplemental MAR, which was denied without an evidentiary hearing by the trial court. *Id.* at 256, 499 S.E.2d at 762. The MAR alleged that the State had sent to the trial court, a proposed order denying defendant's MAR without providing defendant a copy—a contention which the State acknowledged. Accordingly, the *McHone* defendant alleged that the State had engaged in an improper *ex parte* communication with the trial court in violation of his rights to due process under the state and federal constitutions. *Id.* at 258, 499 S.E.2d at 763. The *McHone* defendant argued that he was entitled to an evidentiary hearing "because some

of his asserted grounds for relief required the trial court to resolve questions of fact" and the McHone Court agreed, holding that the trial court was presented with a question of fact—whether an *ex parte* communication did, in fact, occur—which it was required to resolve through an evidentiary hearing. *Id.* The *McHone* Court concluded that pursuant to N.C.G.S. § 15A-1420, "an evidentiary hearing is required unless the motion presents assertions of fact which will entitle the defendant to no relief even if resolved in his favor, or the motion presents only questions of law[.]" *Id.*

The instant case is distinguishable from *McHone*. Based on the record, defendant's evidence was insufficient to "show the existence of the asserted ground for relief." N.C.G.S. § 15A-1420(c)(6). There is insufficient evidence to determine whether juror misconduct occurred as defendant's motion and Bossard's affidavit merely contained general allegations and speculation. *See State v. Harris*, 338 N.C. 129, 143, 449 S.E.2d 371, 377 (1994) (holding that the trial court did not err by failing to hold an evidentiary hearing where the MAR contained a general allegation and "[t]here were no specific contentions that required an evidentiary hearing to resolve questions of fact.")

In *State v. Elliot*, 360 N.C. 400, 628 S.E.2d 735 (2006), the defendant filed a MAR alleging juror misconduct occurred when two jurors met and prayed outside of the jury room during a recess from deliberations. *Id.* at 417, 628 S.E.2d at 747. The trial court denied the defendant's MAR without an evidentiary hearing. *Id.* The *Elliot* court held that even assuming the individual jurors' prayers constituted misconduct, defendant's documentary evidence was insufficient to show the required prejudice. *Id.* at 419, 629 S.E.d at 748.

> Although [the] defendant could have sought affidavits from potential witnesses to support his claim of juror misconduct raised in the [MAR], [the] defendant presented nothing save a few newspaper accounts which shed very little light on the alleged discussions between the two jurors concerning the case, and certainly failed to shed light on any prejudice to defendant which arose from discussions, if any, surrounding the prayer.

*Id.*

A review of the record reveals that defendant's MAR failed to specify: which news broadcast the juror in question had seen besides

a possible broadcast summary from the News 14 Carolina website[1]; the degree of attention the juror in question had paid to the broadcast; the extent to which the juror in question received or remembered the broadcast; whether the juror in question had shared the contents of the news broadcast with other jurors; and the prejudicial effect, if any, of the alleged juror misconduct. Bossard's affidavit raised speculation, not specific contentions requiring an evidentiary hearing. Furthermore, defendant speculated on the possible effect of the alleged juror misconduct by stating things such as "it was reasonable to believe that the news broadcast influenced her opinion and the deliberations of the jury" and "[i]n Mr. Bossard's opinion, the juror based her decisions during deliberations on the news broadcast." Defendant's speculation based on Bossard's speculation long after jury deliberations ended, is insufficient to merit an evidentiary hearing. Therefore, we are unable to conclude that the trial court abused its discretion by failing to hold an evidentiary hearing. Defendant's argument is overruled.

No error.

Judge STEELMAN concurs.

Judge HUNTER, Robert C., dissents by separate opinion.

HUNTER, Robert C., Judge, dissenting.

I conclude that defendant's motion for appropriate relief ("MAR") and supporting documentation presented issues of fact that required an evidentiary hearing, and the trial court's denial of his MAR without holding an evidentiary hearing was an abuse of discretion. *See State v. Elliott*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (2006) (concluding that where the defendant's MAR is filed pursuant to N.C. Gen. Stat. § 15A–1414, "the decision of whether an evidentiary hearing is held is within the sound discretion of the trial court"). Accordingly, I respectfully dissent.

---

1. The dissenting opinion includes a detailed summary of a news broadcast relating to defendant that was printed on a website. However, there is nothing in Mr. Bossard's affidavit to indicate what broadcast the jury may have seen, nor does it mention a website. Therefore, defendant's showing in support of an evidentiary hearing contains mere speculation as to the content and effect of the broadcast Mr. Bossard alleges the juror must have seen.

Defendant was convicted by a jury of common law robbery and assault inflicting serious injury related to the 11 May 2009 robbery of a retail clothing store owned by Old Navy, Inc. located in Mecklenburg County, North Carolina. During the robbery, the perpetrator assaulted one of the store's employees, Teresa Gillespie, by punching her in the face when she asked the perpetrator to leave the store. Approximately three weeks after the robbery, Ms. Gillespie saw defendant's photograph on a television news broadcast from which she identified defendant as the perpetrator of the assault and robbery. After using the Internet to view defendant's photographs a second time, Ms. Gillespie called the police and told them of her identification of defendant.

Defendant's charges came on for a jury trial during the 17 May 2010 Criminal Session of Mecklenburg County Superior Court before Judge Nathaniel J. Poovey. Before the jury was impaneled, the State and defendant's counsel informed the trial court that the parties had agreed that the State's witness could testify that she had seen a news broadcast about defendant, but that the content of the news broadcast, the evidence of defendant's prior arrest, and the arrest photos were to be excluded from the trial. When the jury was impaneled, the trial court asked the jurors twice if any of them had read or heard anything about the case, such as a report in the newspaper or other news media. The trial court then instructed the jury on the rules each juror was to obey during the trial in order to ensure that the verdict was based solely upon the evidence presented in the courtroom and not on any "outside evidence or influences." Included in these rules was a specific prohibition from reading or listening to any news reports related to the trial, regardless of whether such reports were in a newspaper or broadcast on television or radio. The trial court confirmed that each juror understood and agreed to abide by these rules. During the trial, the trial court reminded the jurors of their duty to obey these rules. On 17 May 2011, the jurors were reminded before their lunch recess and before their overnight recess: "During the overnight recess don't talk about the case. Do not allow your minds to be formed. Remember all the other rules that are given to you."

On 19 May 2011, the jury returned a guilty verdict for common law robbery and assault inflicting serious injury. Defendant was sentenced to a term of 15 to 18 months imprisonment for the robbery conviction and 75 days imprisonment for the assault conviction. Eight days after the entry of judgment, defendant filed his MAR pursuant to N.C. Gen. Stat. § 15A-1414 alleging that he did not receive a

fair trial. In his MAR, defendant specifically alleged that after the trial, while the jurors were leaving the courthouse, a female juror admitted to several other jurors that during the trial she watched a television news broadcast that was related to the trial. In support of his MAR, defendant attached an affidavit from a juror, Mr. Tom Bossard, who averred that an unnamed female juror admitted to him and two other jurors that during the trial she had watched a news broadcast related to the trial. Defendant identified the specific news broadcast viewed by the juror and attached to his MAR a printed summary of the broadcast that was posted to the television channel's website. The printed summary contained details of the charges for which defendant was being tried—as well as details of unrelated robbery charges and an unrelated charge of second degree murder:

Suspect in chase, deadly accident appears in court

By: Aaron Mesmer

CHARLOTTE—A man accused of second-degree murder in connection with a fatal wreck is on trial Monday in uptown Charlotte for a separate crime.

Demario Rollins is charged with robbery and assault inflicting serious injury after police say he robbed a Mecklenburg County Old navy [sic] store on May 11, 2009.

Eleven days after that Rollins was involved in a police chase that begin in Concord—he was suspected of robbing as tore [sic] at Concord Mills Mall—and ended in Mallard Creek Church Road in northeast Charlotte.

Rollins' [sic] car plowed head-on into a car driven by 84-year old Docia Barber. He is set to appear on second-degree murder charges in late June.

Following the crash, questions arose about police department chase policies but no one was found to have acted against policy.

It was revelaed [sic] in court Monday that Rollins has a history of robbery-related charges. This trail [sic] is expected to wrap up by Wednesday.

Defendant argued that he did not receive a fair trial before an impartial jury as the female juror's conduct was in violation of the trial court's rules to refrain from watching news about the trial and

circumvented the State's agreement to exclude incompetent and prejudicial information of defendant's unrelated criminal charges. Defendant sought an evidentiary hearing as to the allegation of juror misconduct and a new trial. On 29 June 2010, Judge Richard D. Boner found, in part, that "[n]othing in the [MAR] or affidavit indicates which news broadcast the juror supposedly viewed[,]" concluded that defendant's MAR was without merit, and denied defendant's motion without holding an evidentiary hearing.

In reaching its decision that the trial court did not err in denying defendant's MAR without an evidentiary hearing, the majority states that defendant's MAR provided no more than general allegations and speculation of juror misconduct. I cannot agree. Indeed, the trial court's conclusion that defendant did not identify the news broadcast that the juror watched is clearly contradicted by the record. Defendant specifically alleged in his MAR that defendant's "prior arrests were made known to a juror during the course of the trial through a news broadcast that aired on the evening of Monday, May 17th, the first day of the trial." In support, defendant provided a summary of the news broadcast in the body of his MAR. Additionally, defendant attached to his MAR a copy of the news story as it appeared on the news station's website (reproduced above) as well as affidavit testimony that a juror admitted to watching a news broadcast during the trial. In light of the specificity of defendant's MAR and the highly prejudicial nature of the allegations in the news broadcast, which were explicitly excluded from the trial, I conclude the trial court abused its discretion by denying defendant an evidentiary hearing for the purpose of determining whether the juror in question viewed this prejudicial information. As the Supreme Court of the United States has stated, "[t]he prejudice to the defendant is almost certain to be as great when that evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence. It may indeed be greater for it is then not tempered by protective procedures." *Marshall v. United States*, 360 U.S. 310, 312-13, 3 L. Ed. 2d 1250, 1252 (1959) (concluding the defendant deserved a new trial where jurors were exposed to newspaper reports of the defendant's criminal record, which the trial court had excluded from evidence) (citation omitted).[1]

---

1. I note that the holding of *Marshall* is not controlling with regard to state court proceedings, *see Murphy v. Florida*, 421 U.S. 794, 798, 44 L. Ed. 2d 589, 593 (1975), however, the *Marshall* Court's admonition of the danger of extraneous prejudicial information is appropriate here.

The specificity and force of defendant's MAR is similar to that seen in *State v. McHone*, 348 N.C. 254, 258-59, 499 S.E.2d 761, 763-64 (1998), which supports my conclusion. In *McHone*, the defendant alleged that the State engaged in an *ex parte* communication with the trial court when the State sent a proposed order dismissing the defendant's supplemental MAR without providing a copy of the proposed order to the defendant. *Id.* at 258, 499 S.E.2d at 763. The State acknowledged that it did send a proposed order to the trial court, which the trial court signed. *Id.* Yet, the trial court denied the defendant's supplemental MAR without an evidentiary hearing. *Id.* On review, the Supreme Court of North Carolina concluded that the defendant's allegations presented a question of fact that it was required to resolve with an evidentiary hearing. *Id.* at 259, 499 S.E.2d at 764.

The cases on which the majority relies are distinguishable. In *State v. Harris*, 338 N.C. 129, 143, 449 S.E.2d 371, 377 (1994), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995), our Supreme Court concluded the defendant's MAR alleging ineffective assistance of counsel lacked specific allegations that would require an evidentiary hearing to resolve questions of fact. Significantly, however, the trial judge in *Harris* that denied the defendant's MAR was the same judge that presided over the defendant's trial. *Id.* This placed the trial judge in a position to determine the effect of the specific acts the defendant alleged to amount to ineffective assistance of counsel and left no other specific allegations that required an evidentiary hearing. *Id.* Here, in contrast, the judge that denied defendant's MAR was not the same judge that presided over defendant's trial. Moreover, defendant's allegation was of juror misconduct occurring outside of the courthouse and resulting in prejudice during jury deliberations, not in-courtroom proceedings. Thus, unlike *Harris*, the trial judge was not in a position to determine the effect of the alleged misconduct without an evidentiary hearing.

In *Elliott*, 360 N.C. at 417, 628 S.E.2d at 747, the defendant filed a MAR alleging that juror misconduct occurred when two jurors prayed outside of the jury room during a recess from deliberations and that after the prayer the two jurors voted to impose a death sentence. Our Supreme Court concluded that the trial court did not abuse its discretion in denying the MAR without an evidentiary hearing because the defendant failed to provide sufficient evidentiary support to show grounds for relief or the prejudice required by N.C. Gen. Stat. § 15A-1420(c)(6) (2005). *Elliott*, 360 N.C. at 419-20, 628 S.E.2d at 748. While the defendant alleged two jurors had prayed together, the

Court noted the absence of any authority prohibiting jurors from praying together or even contacting one another outside of the jury room. *Id.* at 418, 628 S.E.2d at 747. Thus, the conduct alleged in the defendant's MAR did not violate the only limitation relevant to the conduct alleged: that jurors not discuss the case except after deliberations have begun and then only in the jury room. *Id.* (citing N.C. Gen. Stat. § 15A-1236(a)(1) (2005)); *see* N.C. Gen. Stat. § 15A-1236(a)(1) (2011) (providing that jurors have a duty "[n]ot to talk among themselves about the case except in the jury room after their deliberations have begun"). Here, unlike *Elliot*, defendant's affidavit alleged that a juror violated her duty to refrain from watching television news reports about the trial, and that defendant was prejudiced by the juror's conduct. *See* N.C. Gen. Stat. § 15A-1236(a)(4) (providing that the trial court must admonish the jurors that is it is their duty "[t]o avoid reading, watching, or listening to accounts of the trial"). Additionally, while the defendant in *Elliot* failed to provide any affidavits from jurors regarding the allegation of misconduct, 360 N.C. at 419, 628 S.E.2d at 748, defendant provided evidence to support his allegations in the form of an affidavit from a juror, Mr. Bossard, as well as a summary of the news broadcast.

Another factor distinguishing *Elliot* from this case is the admissibility of evidence that could support the claims of juror misconduct. The Court in *Elliot* noted that had the trial court conducted an evidentiary hearing, the defendant would not have been able to introduce any evidence to support the claims made in his MAR. *Id.* at 420, 628 S.E.2d at 748. This is because the type of juror misconduct alleged in *Elliot* did not fall into either category of information or activity about which a juror may testify to impeach the jury's verdict. *Id.* at 420, 628 S.E.2d 748-49.

The matters about which a juror is permitted to testify for the purpose of impeaching the jury's verdict include: "(1) *Matters not in evidence which came to the attention of one or more jurors under circumstances which would violate the defendant's constitutional right to confront the witnesses against him;* or (2) Bribery, intimidation, or attempted bribery or intimidation of a juror." N.C. Gen. Stat. § 15A-1240(c)(1)-(2) (2011) (emphasis added). Similarly, Rule 606(b) of our Rules of Evidence provides that "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." N.C. Gen. Stat. § 8C-1, Rule 606(b); *State v. Rosier*, 322 N.C. 826, 832, 370 S.E.2d 359,

363 (1988) (interpreting Rule 606's reference to "extraneous information" as meaning "information dealing with the defendant or the case which is being tried, which information reaches a juror without being introduced in evidence"). Yet, the defendant in *Elliot* did not allege that any extraneous information was brought to the attention of any juror, or that someone bribed or intimidated, or attempted to bribe or intimidate any juror. 360 N.C. at 420, 628 S.E.2d at 749. Thus, the jurors in *Elliot* would not have been able to testify in an evidentiary hearing about the allegations in the defendant's MAR. *Id.*

Here, defendant specifically alleged juror misconduct involving extraneous prejudicial information, and the limitations of N.C. Gen. Stat. § 15A-1240(c)(1) and § 8C-1, Rule 606(b) would not prohibit testimony regarding the alleged misconduct. Testimony in support of defendant's allegations that (1) during the trial a juror watched a television news broadcast about defendant that contained information about pending murder and robbery charges that was explicitly excluded from the trial, and that (2) the juror admitted to this misconduct after the trial, would fall squarely within the type of testimony permitted by these statutes. *See Elliot*, 360 N.C. at 420, 628 S.E.2d at 749. As we concluded in *State v. Lyles*, 94 N.C. App. 240, 246, 380 S.E.2d 390, 394 (1989), "it is clear that jurors may testify regarding the *objective events* listed as exceptions in [N.C. Gen. Stat. § 15A-1240(c)(1) and § 8C-1, Rule 606(b)], but are prohibited from testifying to the *subjective effect* those matters had on their verdict."

While I make no conclusion as to the effect of the alleged juror misconduct, I conclude defendant's MAR and supporting documentation presented an issue of fact that the trial court was required to resolve through an evidentiary hearing. N.C. Gen. Stat. § 15A-1240(c)(1) and § 8C-1, Rule 606(b) do not prohibit testimony as to the objective events alleged by defendant: that a juror was presented with highly prejudicial information through a news broadcast about defendant, in contravention of the trial court's mandate and the parties' agreement to exclude the information from the trial. The decision not to hold an evidentiary hearing was an abuse of discretion, and I would reverse the trial court's order.